Randolph v. Carlton.

---

## RANDOLPH v. CARLTON.

1. The levy of an ancillary attachment upon land, operates a lien, and when a judgment is rendered in favor of the plaintiff, the creditor's right to have it sold to satisfy his judgment, will override and defeat all intermediate conveyances made by the defendant.

2. The sheriff returned a writ of *fieri facias*, indorsed thus, viz: "Levied on one tract of land adjoining the lands of Ira Carlton, Mrs. Gray, and others containing two hundred acres, more or less:" *Held*, that the return is sufficiently certain, and the precise location of the land may be shown by extrinsic proof; and as the sheriff was directed to make the money of

Randolph v. Carlton.

the defendant's estate, it will be intended for the purpose of the levy, that the defendant was the proprietor of the land.

3. By receiving possession of land from another under a lease, the tenant impliedly admits that the lessor has such a title as authorized him thus to dispose of the premises; but he cannot be held to affirm any thing in respect to the future; consequently it is allowable for the tenant, when attempted to be ejected by the landlord, to show that the title of the latter *had expired* or *been extinguished by operation of law.*

4. Where a tenant pays the rent, after the expiration of the year, which was due (according to contract) at its close, in an action by the landlord to recover the possession, such payment will not estop him from showing that the landlord's title was extinguished during the year.

5. The land of B being levied on by an attachment, at the suit of W, B conveyed the same to R, under circumstances supposed to indicate an intention to defraud his creditors. R rented the land to C, W then obtained a judgment against B, and the land in question was sold to satisfy it; R brought an action against C, to recover the possession: *Held,* that if C, the tenant, showed no title acquired subsequent to the commencement of his tenure, he could not defeat a recovery, by showing the transaction between B and R to have been intended by them to delay, hinder and defraud creditors.

6. *Semble:* Where an error in a charge to a jury is such as could not prejudice the party excepting, it furnishes no cause for the reversal of the judgment.

7. Where the writ and declaration describes the plaintiff as an administrator suing for the use of another, and his name is merely stated upon the margin of the judgment entry, without indicating that he sues in a representative character, or for the use of another, the title of a purchaser under an execution issued upon the judgment, in which the plaintiff's character, &c. is described in the same manner as in the writ and declaration, will not be affected by the discrepancy.

Writ of Error to the Circuit Court of Greene.

THIS was an action of trespass, brought by the plaintiff in error to try title to certain lands particularly described in the indorsement on the writ and declaration, as well as to recover damages of the defendant for the occupancy of the same. The cause was tried on issue joined, a verdict returned for the defendant, and judgment rendered accordingly. On the trial the plaintiff excepted to the ruling of the Court. From the bill of exceptions it appears that the plaintiff produced and read to the jury a patent

from the United States to Peter R. Beverly, for the lands in controversy, dated the 24th June, 1835, he also adduced a deed from Beverly to himself, dated 13th April, 1840, recorded 20th July, 1841. Also, a paper purporting to be an agreement between the plaintiff and defendant subscribed by the latter, in which he acknowledges he had rented from the former the land in question for the year 1841, and undertaking to pay such sum therefor as two individuals named might consider to be a fair equivalent. On this writing was indorsed a receipt by the plaintiff, dated the 18th of April, 1842, for four hundred dollars of the defendant, in full discharge of the undertaking therein expressed. It was further shown what were the value of the rents and profits, and that the defendant had been in possession of the premises since the 1st of January, 1841.

It was then proved on the part of the defendant, that Wm. D. Wren, describing himself as administrator of Samuel G. Adams, deceased, who sues for the use of John Thompson, jr. caused a suit to be brought in the Circuit Court of Greene, against Peter R. Beverly. The writ issued 15th February, 1839, and was executed the 16th; on the 20th of the same month an ancillary attachment issued in the case, under the 8th section of the act of 1837, which was levied on the 26th of that month, "on one tract of land, adjoinging the land of Ira Carlton, Mrs. Gray and others, containing two hundred acres, more or less." Judgment was rendered the 12th March, 1841, and on the first Monday in August of the same year, the premises in question were sold under a *venditioni exponas*, and although the plaintiff was present at the sale, he did not bid for them. The lands were sold by the number of the quarter section, &c. and so described in the deed which defendant received from the sheriff as a purchaser. The plaintiff objected to the admission of the judgment as evidence, because on the margin of the entry the case was stated "William D. Wren v. Peter R. Beverly," and the parties were not otherwise described; and the *venditioni exponas* was objected to, because it did not conform to the judgment, but stated the parties as in the writ. These objections were overruled and the evidence permitted to go to the jury.

The defendant then gave in evidence a deed bearing date the 19th December, 1840, by which the lands in question, in consideration of three thousand dollars, were conveyed by Beverly to

the defendant, at the foot of which was a memorandum stating that the deed was delivered to the plaintiff, to be held as an escrow, to be delivered to the gaantor upon the happening of a certain event therein provided for. He also, in connection with the foregoing, read to the jury a writing, which recited that a note of three thousand dollars, made by the defendant, was delivered to the plaintiff, which he was to retain until the suit of Wren against Beverly was determined. If Beverly was successful in that case, then the note was to be handed over to him, but if the result was otherwise, the note was to be returned to defendant, and the deed to Beverly. This paper expressed the condition on which the deed became operative, and bore even date therewith. The suit brought by Wren having been determined against Beverly, the contract for the sale of the land was cancelled, and the deed and note returned to the parties respectively entitled to them.

It was proved that Randolph was Beverly's nephew, and with a knowledge of the pendency of Wren's suit, the levy of attachment, &c. he received a deed from Beverly of the same lands ; that although the conveyance was absolute, yet he never paid any part of the purchase money ; that he had given his note for a large sum, but it was verbally understood between him and Beverly, that he was not to be called on for the money, until the title was freed from the levy of the attachment.

It was not shown that the defendant had notice of the deed to the plaintiff. There was proof tending to show that the deed from Beverly to the plaintiff was intended to delay, hinder and defraud Wren, in the collection of his debt, and that the plaintiff participated in that transaction, with an actual or constructive knowledge of the intention.

The lands were sold by the sheriff, not only under a *venditioni exponas*, but under a *fieri facias*, issued on the judgment in favor of Wren, both of which were in his hands at the same time ; and the latter described the land by the appropriate numbers of the government surveys.

The Court charged the jury as follows ; 1. If they are satisfied from the evidence, that the lands sued for, were the same as those mentioned in the levy upon the attachment, the levy operated a lien upon them from the day it was made. 2. To make out the defence, the defendant must show a judgment, execution, levy, and sale, and that the deed from Beverly to the plaintiff, being

subsequent to the levy of the attachment, ceased to be operative as against the defendant, after the sale under Wren's judgment. 3. It is a general rule that the payment of rent, is an acknowlegement of tenancy, and that the tenant cannot dispute the title of his landlord; but if the jury believe the lands in question to be the same that were levied on by the attachment, that they were sold by the sheriff under that levy, that the plaintiff was present at that sale, making no effort to buy in the outstanding title, then the defendant had the right to purchase the land, and the title of the latter would be upheld, even against the plaintiff. 4. That the payment of rent by the defendant, in April, 1842, for the entire year 1841, does not deprive him of the right of controverting the plaintiff's title. 5. The levy of the attachment was not void for uncertainty, but if the proof showed that the lands in question answer to the description given in the levy, that Beverly had no other lands than these, in the same locality, then the levy was sufficiently certain, and would operate a lien from its date. That if the levy was upon the land, the plaintiff's purchase, with a knowedge of the fact, could not prevail against the levy, or the defendant's purchase under it. 6. If the proof did not show the identity of the lands in question with those levied on, then it was competent for them to inquire, whether the deed from Beverly to the plaintiff was fraudulent; if it was, and not a real transaction, or made with intent to delay, hinder or defraud Wren of his just demand; if the plaintiff had notice of such intention by Beverly, and yet bought the land, he acquired no title that could prevail over the defendant's purchase. But unless the deed to the plaintiff was fraudulent, it must prevail over defendant's purchase, (because of a prior date,) if the levy was incurably defective.

The plaintiff then prayed the Court to instruct the jury to the following effect: 1. The levy of an ancillary attachment upon lands operated no lien thereon, and that the defendant having entered under the plaintiff, cannot set up the title he acquired under the levy and sale. 2. That the levy of the attachment in favor of Wren, was void for uncertainty. 3. That it is not competent in this case to inquire, whether the deed from Beverly to the plaintiff, was fraudulent. 4. That the payment of rent by Carlton to Randolph, after Carlton's purchase, and which accrued thereafter, though by virtue of a previous contract, estopped him

from denying Randolph's title, or setting up one adverse to it. These several charges were refused.

B. F. Porter, for the plaintiff in error, made the following points: 1. The judgment produced by the defendant to sustain his title, did not follow the process and declaration, in describing the parties to the action, nor did the execution conform to the judgment. 2. The Court permitted the defendant to identify by parol proof the lands levied on, with those the subject of the action. 3. So the defendant was allowed to offer proof, that though the plaintiff had given his note for the land, he had paid no part of the purchase money, and that the sale was made to hinder and delay creditors. In the admission of all this evidence, it is insisted that the Circuit Court erred.

But the most important inquiry is, whether the defendant is not to be regarded as the plaintiff's tenant, and thus considered, can he dispute the title of his landlord? By paying the rent accruing in 1841, the defendant recognized his tenancy as late as April, 1842, although he purchased in August, 1841. If this be not so, then the purchase of the defendant made him a trespasser, as he thereby disclaimed to hold under the plaintiff, and the action is maintainable. [3 Peters' Rep. 49; 6 Id. 382; 13 Id. 1; 14 Id. 102; 7 Johns. Rep. 188, and note 1.]

The defendant cannot be permitted to set up a title adverse to plaintiff, if (as is insisted) he is his tenant. By admitting title in another, a party will not be permitted to set up title in himself, under a deed held when the admission was made. [12 Wend. Rep. 57.] If one enters under A, and afterwards takes a release from B, in an ejectment against him by one holding under A, he cannot deny the title of A. and set up B's as the elder and better title. [10 Johns. Rep. 292; 6 Cow. Rep. 751; 6 Johns. Rep. 34; 7 Id. 157; 1 Caine's Rep. 444; 2 Id. 215; 7 Johns. Rep. 186.]

If the transaction between Beverly and the plaintiff was fraudulent, the fraud could not be inquired into at law. [Davis v. McKinney, 5 Ala. Rep. 728.] And if it could, the charge of the Court was too broad, and calculated to mislead. The motive makes the fraud, and not the mere act of purchase. The case in 22 Wend. Rep. 122-3, relied on by the defendant, is not opposed to the view taken; it merely determines that the lessee may de-

fend himself by showing the lessor has conveyed away, or lost title during the existence of the lease.

J. ERWIN and J. B. CLARK, for the defendant.   The defendant does not set up an outstanding title in a third person, or rely upon the purchase of such a title ; but he insists that the plaintiff cannot recover because his title was determined, or extinguished, during the continuance of the lease from the plaintiff to him. That the title of the defendant is superior to, in fact destructive of that on which the plaintiff relies.   There was no reason why the defendant should not have been permitted to protect his tenancy, by purchasing the land at the sale of the sheriff.   The plaintiff's purchase must have been made subject to the attachment, and as it is the policy of the law to encourage competition at judicial sales, the defendant should have been allowed to bid.

The general rule, that a tenant cannot dispute the title of his landlord is not denied, but it does not obtain universally.   Here the plaintiff's title, (which never was good against purchasers and creditors,) expired, or was put an end to, by the sale to satisfy the lien that had attached, before his deed was executed, and such case forms an exception to the rule. [2 B. Monr. Rep. 234 ; 6 Wend. Rep. 666 ; 5 Wend. Rep. 44 ; 21 Wend Rep. 121 ; 1 A. K. Marsh. Rep. 99 ; Com. Land. & Ten. 520-3 ; Cro. Eliz. Rep. 398 ; 5 Cow. Rep. 123, 134-5 ; 4 Term Rep. 681.]   And the tenant may set up the expiration of the landlord's title, although the latter had done no wrongful act, but had been entirely passive.   [Com. Land. & Ten. 521.]

COLLIER, C. J.—1. The eighth section of the act of 1837, [Clay's Dig. 61, § 24,] authorizes the plaintiff in a suit at law, commenced in the Circuit or County Court, to cause an attachment to be issued against the defendant's estate, where he absconds or secretes himself, or shall remove, or be about to remove out of this State, or shall be about to remove his property out of this State, or be about to dispose of his property fraudulently, with intent to avoid the payment of the debt sued for.   It also provides that the plaintiff shall make oath to the truth of the particular ground upon which the attachment issues, and that the same "shall be issued, executed and returned as near as may be in the same manner as original attachments, and the said affidavit, and bond, and at-

Randolph v. Carlton.

tachment, when returned, shall be filed with the papers in the original suit, and shall constitute a part thereof, and the plaintiff in said suit, may proceed to judgment as in other cases." By the first section of the same statute it is enacted, " Whenever an original attachment shall be issued for, or upon any of the causes now provided by law, it shall be lawful to levy the same upon any land belonging to the defendant in such attachment, by the officer whose duty it may be to levy or execute the same, in the same manner that attachments are or may by law authorized to be levied on goods, chattels, or effects." [Clay's Dig. 60, § 29.] The 9th section provides that any property which may be attached under the provisions of the eighth section, may be replevied, as in other cases of attachment, and after judgment shall be rendered and execution issued against the defendant, if any property replevied shall not be delivered to the sheriff or his deputy, holding such execution, within ten days after the demand thereof, &c., it shall be the duty of the sheriff, &c. to certify the fact to the clerk issuing the same; whereupon the replevin bond shall be deemed forfeited, and it shall be the duty of the clerk forthwith to issue an execution, against the principal and sureties therein, for the amount of the plaintiff's judgment, with costs: *Further*, when judgment shall be rendered, execution may issue in the usual way, which shall first be levied on the property attached, if to be had, and then upon any other property of the defendant, until a sufficient amount shall be levied on to satisfy the execution in full. [Ciay's Dig. 62, § 35.]

In McRae v. McLean, 3 Porter's Rep. 138, it was decided, that an attachment created a lien in favor of an attaching creditor, which cannot be divested by the replevying of the property; and that when attached, it was in the custody of the law, to abide the judgment of the Court. So in Pond v. Griffin, 1 Ala. Rep. 678, N. S., a case which arose subsequent to the passage of the act of 1837, it was held that an attachment levied on slaves created a lien which could not be divested by writs of *fieri facias*, placed in the sheriff's hands afterwards, but on the same day. [See Dore v. Dawson, 6 Ala. Rep. 712.]

It is perfectly clear from the act and the cases cited, that the ancillary attachment which is provided for, by the eighth section, may be levied on land, and that the lien in such case, and in respect to such property, is a necessary consequence of the levy. This

Randolph v. Carlton.

conclusion is so obvious, from these citations, as to require neither argument or illustration.

2. In Webb v. Bumpass, 9 Porter's Rep. 201, which was an action by a purchaser at a sheriff's sale, to recover the possession of land, the levy of the *fieri facias* was indorsed thus:— " Levied on a tract of land, upon which Gabriel Bumpass now lives, in Lauderdale county, adjoining Richard Baugh and ——, supposed to contain eighty acres," &c. We said, " It was certainly no objection to the execution offered in evidence, that the sheriff's return does not describe with more particularity, the land levied on. There is no statute imposing upon the sheriff the duty of making a more particular description." Benjamin v. Smith, [4 Wend. Rep. 462,] is there cited, in which the Court said it was not necessary in a return to an execution, by virtue of which lands have been sold, to describe the land with particularity, but it was competent to show its identity with that levied on by parol proof. [See also, Boylston v. Carver, 11 Mass. Rep. 515 ; Hedge v. Drew, 12 Pick. Rep. 141 ; Hubbert v. McCollum, 6 Ala. Rep. 221.]

In the case before us, the attachment was returned levied "on one tract of land adjoining the lands of Ira Carlton, Mrs. Gray, and others, containing two hundred acres, more or less." This is sufficiently certain, and the precise location of the land may be shown by extrinsic proof. It is not necessary that the return should have affirmed that the defendant in attachment was the proprietor of the land ; this will be intended even where the regularity of the levy is drawn in question by a direct proceeding. The sheriff, it must be supposed, did his duty, and as he was commanded to attach the defendant's estate, it will not be presumed that he levied upon the property of another person. [Bickerstaff v. Patterson, 8 Porter's Rep. 245 ; Kirksey, et al. v. Bates, 1 Ala. Rep. N. S. 303 ; Miller, et al. v. McMillan, et al. 4 Ala. Rep. 527.]

3. It is said a tenant cannot deny the title of his landlord, under which he entered ; yet he may show that it has terminated, either by its original limitation, or by conveyance, or by the judgment and operation of law. [Jackson v. Davis, 5 Cow. Rep. 123-134.] In Jackson v. Rowland, 6 Wend. Rep. 666, 671, the defendant, who was the tenant of the lessor of the plaintiff, set up a title acquired by a third person, as a purchaser under execution, issued on judgments against the lessor. In answer to the ar-

### Randolph v. Carlton.

gument that the defendant could not avail himself of the outstanding title, the Court said "A tenant cannot dispute the title of his landlord, so long as it remains as it was at the time the tenancy commenced; but he may show that the title under which he entered has *expired*, or has been *extinguished*." *Further*, if the landlord seeks to eject his tenant, surely the latter may set up an outstanding title. "No well founded objection is perceived to the defendant's setting up a title, acquired under a judgment since he became tenant, overreaching the title of his land- lord." There, the title set up, was made effective in 1827, but the Court held that it should relate back to the time when the judgments became operative, and thus defeat a mortgage executed by the landlord in the interval. So it has been decided by the same Court, that "so long as a tenant is not expelled, he has in general, no right to question his landlord's title. He cannot deny that he had a right to demise at the time of the lease. He cannot defend on the ground that he has acquired an outstanding title adverse to that of the landlord. But I am not aware that the estoppel goes farther. If the landlord part with his title pending the lease, the duty of the tenant, including that of paying rent, is due to the assignee; and should the tenant buy in the assignee's right, the lease would be extinguished. So, if the landlord sell and release to the lessee. In these cases no action would lie for the rent. Therefore, had there been a sheriff's sale of the whole reversion of the demised premises, and the defendant had redeemed or purchased under the judgment, no action could have been sustained; for a purchase or acquisition of title under a judgment against the lessor, is the same thing as if he had granted by deed. It is, to be sure, acquiring title indirectly, and by operation of law, from the lessor; but it comes through his act and consent, or his neglect, and is therefore the same in legal effect as if he had granted or demised the reversion." [Nellis v. Lathrop, 22 Wend. Rep. 121.]

In Swann v. Wilson, [1 A. K. Marsh. Rep. 99,] the general rule, that a tenant cannot controvert his landlord's title, was admitted; but it was said he may show that the landlord's title has expired; or that a title which he himself acquired has been adjudged by the decree of a court of equity to be the superior one. And in Gregory's heirs v. Crab's heirs, [2 B. Monr. Rep. 234,] it was held, that the tenant is not estopped to show that the landlord

conveyed the premises to a third person subsequent to the tenant's entry, and that allegiance is due to the assignee.

Comyn, in his Treatise on the Law of Landlord and Tenant, 520-523, after stating the general rule, that the defendant cannot defend in ejectment against the landlord, or those claiming under him, upon a supposed defect of title, says : " But though the defendant cannot show that his lessor *never* had title to the demised premises, he may, on admitting that he once had a title, shew, that his interest has expired.   As, if the lessor being tenant *per autre vie*, bring debt against the lessee for rent. accruing since the death of *cestui que vie*, the tenant may show, (not that the lessor never had title, but. admitting that he once had title,) that the interest of the lessor is at an end.   Where, therefore, the heir of the lessor brought covenant for want of repairs, and the defendant pleaded that the lessor was only tenant for life, and traversed that the reversion was in him and his heirs, the Court held this to be a good plea.".   *Further*, the lessee may show that the lessor was only seized in right of his wife for her life, and that she died before the covenant was broken.   In Doe ex dem Lowden v. Warson, 2 Starkie's Rep. 230, Lord Ellenborough held, that the tenant in ejectment might show that his landlord had disposed of his interest during the term.

The defence set up in the case before us, when limited to the effect of the attachment, and proceedings consequent thereon, does not deny that the plaintiff had a good title at the time the defendant became his tenant ; but it assumes, that that title, be it what it may, has been extinguished since the tenancy commenced, and that the defendant has become the proprietor of the premises in question.   By receiving the possession of land from another, under a lease, the tenant *impliedly admits* that his lessor has such a title as authorized him thus to dispose of the premises, but he cannot be held to affirm any thing in respect to its continuance ; consequently it is allowable to show that the title has expired, or been extinguished by operation of law.

We have seen, that by the levy of the attachment on the land, the plaintiff acquired a lien upon it, which continued in force up to the rendition of the judgment, and the statue saved it, and made it available, although a *fieri facias* instead of a *venditioni exponas* was issued upon the judgment.   Speaking of the lien which the levy of an attachment operates, the Superior Court of New

Randolph v. Carlton.

Hampshire said, "the existence of the lien or security is, in our view, in no way contingent, conditional or inchoate. Its existence does not depend upon the judgment. It exists in its full force, from the moment the attachment is made; as much so as a lien by judgment, upon the rendition of the judgment in the States where that security is recognized. As we have already seen, it fastens itself upon, and binds the property, at once giving priority of right," &c. [Kittredge v. Warren, January term, 1844; 7 Law Reporter, No. 2.] The plaintiff purchased from Beverly after the levy of Wren's attachment, and after the latter acquired a right to have the land sold to satisfy such judgment as he might obtain in that proceeding. This lien we have seen, was continuing, and paramount to any conveyance of the property which Beverly could make. If a third person had become the purchaser at the sale under the execution, the cases cited show, that the allegiance of the tenant would be transferred to him, if the tenant continued to occupy with the permission of such a purchaser; and without stopping to particularize, in several of the cases, the tenant was allowed to set up his own title, acquired after the extinction of the landlord's; and none of them are opposed to a defence thus sustained.

None of the elementary writers or adjudged cases which have fallen under our observation lay down the general rule, as one of unyielding and universal application; but we have seen that it has many exceptions. Perhaps no case may be found which is *in totidem verbis* like the present, but we think the principle of several of those noticed by us are so strikingly similar, as not to require illustration to make the analogy more manifest.

The title of the plaintiff does not remain as it did at the time the defendant's tenancy commenced. Then, he had as it respects Beverly an unquestionable right, and if Wren failed in his suit, or the lien of the attachment was discharged, his title would be disembarrassed, unless it could be overturned, because the purchase was not *bona fide*. But the suit was prosecuted to judgment, and execution, the lien of the attachment made available, and all semblance of title divested from the plaintiff. Under such circumstances, the defendant might have resisted a recovery, (as we have seen,) if a third person had purchased, by becoming his tenant; and there being no rule of law which forbids one situated

78

as the defendant, to purchase, we think he may resist a recovery by setting up the title he has acquired.

4. The payment by the defendant, in April, 1842, of the rent which he had agreed to pay the plaintiff for the enjoyment of the premises during the year 1841, was not an admission of a continuing tenancy, and consequently does not estop him from showing that the plaintiff's title had been extinguished, subsequent to the commencement of the lease.

5. In the sixth instruction to the jury, the Circuit Judge misapprehended the law.   He said, if the proof did not show the identity of the lands in question with those levied on, then it was competent for them to inquire into the *bona fides* of the transaction between Beverly and Randolph ; and if the conveyance was made, with the intention to defraud Wren of his demand, and so known to the plaintiff, then the plaintiff acquired no title that could prevail against the defendant's purchase.   This charge tolerates the right of the tenant to dispute the title of his landlord.   It does not refer to any change in the title after the tenancy commenced, but it assumes, that if it was then invalid, the tenant might defend an action for his ouster, by showing its invalidity ; and this without reference to any *post factum* right acquired by the tenant. As to defendant's purchase of lands under execution, it did not authorize him to hold them against his landlord, if he could not make it appear that those levied on by the attachment and sold under the execution, were the same which the plaintiff was seeking to recover.   Such sale and purchase would avail nothing, and should be thrown entirely out of view in considering the legal question raised upon the charge.   When stripped of every thing extraneous, the instruction amounts to this, viz : If the transaction between Beverly and the plaintiff was influenced by the intention to defraud Wren, and the plaintiff was cognizant of the *quo animo* of Beverly, then he could not oust his tenant, though the latter showed no title.   It is sufficiently manifest from what has been said, that this charge is not in harmony with the law.

If the question whether the lands which have been attached and sold under the execution were identical with those now in controversy, was one of a legal character, and the record showed their identity, we might perhaps be inclined to hold that the error noticed did not prejudice the plaintiff; and consequently furnished no cause for the reversal of the judgment.   But there

is no such proof recited in the record. The declaration describes the land by its numbers, according to the official survey, while (as we have seen,) in the levy of the attachment, it is described by its locality in reference to other proprietors of adjoining lands. Thus it is obvious that parol proof was necessary to settle the question of identity.

6. In respect to the discrepancy between the writ, declaration and judgment, it certainly was not such as should have induced the exclusion of the judgment as evidence. The writ and declaration describe Wren as administrator, suing for the use of another, and his name is merely stated upon the margin of the judgment, without showing in what character he recovered. We should be disposed to treat this objection as untenable, even in a direct proceeding at the suit of Beverly, to reverse Wren's judgment, but coming up collaterally, we have no hesitation in saying it cannot be supported. The judgment furnished a warrant for the execution, and we will not go further back to scan the regularity of the proceedings.

The other points raised in the cause, are either embraced by those considered, or cannot arise upon a future trial. Without extending this opinion to greater length, we have only to add, that the judgment of the Circuit Court is reversed, and the cause remanded.

GOLDTHWAITE, J., *dissenting.*—I am constrained in this case, to dissent from the opinion just delivered, because, in my judgment, the effect of it is to subvert the salutary rule that a tenant shall not be permitted to controvert the title of his landlord.

Having regard to our statutes protecting the actual possession, I doubt the propriety of any exception to this rule, even when the title of the landlord is sold by sheriff's sale, as the tendency of permitting the tenant, in that case, to purchase for himself, is to tempt the fealty which he owes his landlord, and turn one who should be a faithful retainer into a secret enemy ; but conceding that as an exception, it does not touch this case. Here, there has been no sale of Randolph's title, but Beverly's is the only one with which the purchaser from the sheriff is invested. Beverly's title is adverse to that of Randolph, and if Carlton had purchased directly from Beverly, no one could properly assert that a title

so acquired could be interposed to defeat Randolph; and can there be a different rule when the title passes by means of the sheriff, who is the mere legal agent of Beverly? It may be said, that Beverly himself could convey no title to another, but, to test the principle, let it be supposed there was a valid contract. between Randolph and him for the purchase, made previous to the levy of the attachment, but that the deed was either not executed at all, or was so after the levy. What then is the condition of the parties under the operation of the rule declared? It seems to me, that the decision now made, extends the exceptions to the rule so far as to leave it of little value to the landlord.

In my judgment, the result which is attained by the Court is correct, but I think also, that the principle admitted at the close of the opinion governs the entire cause.