## Arnold *vs* Foot, Bowler, &c.

ERROR TO THE KENTON CIRCUIT.

*Case* 19.

*Mortgages. Liens. Rents.*

*September* 25.

JUDGE MARSHALL delivered the opinion of the Court.

Case stated.

IN June, 1834, Price and Montague executed a deed of mortgage, professing to convey to Arnold lots Nos. 75 and 76 in the town (now city,) of Covington, to secure him against loss on account of his liability for certain enumerated debts of Price, for which Arnold was either security or accommodation endorser. Among these debts was a note of Price, endorsed by Arnold, to Foot and Bowler for $200. Montague does not appear to have

been originally a party to any of these debts, but he ac-
knowledges in the mortgage that he is equally bound with
Price for their payment.   And it appears that Price had,
before that time, made some conveyance to him of lot
75, or of both lots, based upon the consideration, as it
is said, of his assuming to pay certain debts of Price.
But as this conveyance is not exhibited nor the particu-
lars of it either proved or stated, nor the debts assumed
by Montague designated, nor any assumpsit by him
shown, except that contained in this mortgage, we shall
assume from this and other facts appearing in the case,
that as against Foot and Bowler, who as creditors of Price
are seeking their remedy against his equity of redemption
in the mortgaged property, the deed to Montague presents
no obstacle, and that it was, as is alledged, fraudulent
and void; and at any rate that Montague has no interest
except in a fair disposition of the mortgaged property.
It appears that at the date of the mortgage, Foot and
Bowler held a second note of $257, executed by Price
to one Fisher, and assigned by Fisher to them, and that
both notes were, in fact, executed for the benefit of Fish-
er, for whom Price was under other liabilities, as was
Arnold also.   In October, 1834, judgments were obtain-
ed on each of these notes, and executions thereon were
returned "no property found."   But a subsequent execu-
tion on the judgment for $200, was levied on the equity
of redemption under the mortgage above stated, which
was sold and Foot and Bowler became the purchasers.

It further appears that for the lot No. 76, Price held
only a bond for title, upon A. Gano; that prior to the
date of the mortgage, he had exchanged a part of that lot,
fronting forty one feet and running back its whole length,
in part payment for other property obtained from Fisher,
but retained Gano's bond as an indemnity against certain
liabilities for Fisher, executing to him his bond for con-
veying the forty one feet, and also for the payment of
$333, due from him to Fisher, when the latter should re-
lease him from responsibility for three debts mentioned,
viz: one of $500 to McClure, $333 to Barr and $200 to
Bowler, understood to be the same as the note to Foot
and Bowler, mentioned in the mortgage.

Gano's bond seems to have been assigned by Price to Montague, in April, 1834, and by Montague to Arnold in July, 1834. In 1837, Fisher assigned Price's bond to Arnold, and in 1840, Arnold obtained a deed from Gano for the entire lot No. 76.

In January, 1839, Price and Montague conveyed to one Foley, all their interest in a portion of lot No. 75, fronting 47 feet and running back 95 feet, for the alledged consideration of $450, of which it appears from the testimony, that $150 were paid in hand and the residue was to be paid to Foot and Bowler; and it would seem that under this arrangement, the judgment for $200, with interest, &c., has been paid by Foley. But this fact is not alledged in the pleadings. It is also stated by Foley, in his deposition, that in the same year that he made this purchase, he sold and conveyed to Foot and Bowler all the interest he had acquired from Price and Montague. And it may perhaps, be inferred, that in this way he paid them what he had undertaken to pay, and that he acted as their agent in making the purchase. These facts, however, except the fact of Foley's purchase, are not alledged.

In April, 1839, Foot and Bowler filed their bill against Price, Montague, Fisher, Arnold and Foley, alledging fraud in the conveyance from Price to Montague, setting up their judgments, executions, and the returns, relying upon their own purchase of the equity of redemption before the transfer to Foley, claiming the right to redeem from Arnold, and requiring an account of the mortgage debts paid by him, and also of rents received from the premises. They also claim that their debt of $257 against Price, and endorsed by Fisher, was secured by the arrangement between Price and Fisher, and has a lien on the 41 feet of lot No. 76, and pray for general relief.

Arnold makes his answer a cross bill, in which he alledges, that shortly after the date of the mortgage he discovered the condition of the title to lot No. 76, and that the mortgage gave him no lien upon 41 feet of it, which had been sold to Fisher; that by arrangement entirely distinct from the mortgage, he acquired the right of Fisher,

by paying the McClure debt, amounting with interest, to over $600, and got the bond of Gano from Montague, and thus obtained the title. He claims to hold the 41 feet as his own, free from the mortgage, and without responsibility for rents. He states his payment of all the debts mentioned in the mortgage, except the $200 to the complainants, and claims as a credit upon the amount of rents received from the lot No. 76, expenditures made in payment of taxes, and paving dues, and in redeeming the lot, which had been sold therefor. He and the other defendants deny that the note for $257 was secured by the arrangement or bond between Price and Fisher, and also deny the validity of the purchase of the equity of redemption by the complainants under their execution for one of the mortgage debts.

The Court directed an account to be taken of payments made by Arnold upon the mortgage debts, and also of rents received by him from both lots, and for the balance in his favor on the account thus taken, without allowing him credits for repairs, taxes, &c., a sale of both lots was decreed without discrimination. From this decree Arnold has appealed, and claims not only that he should have been allowed his expenditures, made for the benefit of the mortgaged premises, but also that he should have been regarded as the absolute owner of 41 feet of lot 76, without accountability for the rents thereof, and that that portion of the lot should not have been sold, or that at any rate, if it is to be held subject to the mortgage, he is entitled to be reimbursed for the payment by which it was relived from the claim of Fisher upon it, including not only the McClure debt with interest, but also a debt of $400 paid to Powell, in which he was the surety of Fisher.

*Decree of the Circuit Court, and Arnold's objections thereto.*

We are satisfied that the Court erred in not allowing the expenditures of Arnold on account of lot 76, as a credit upon the rents. The propriety of this claim is too obvious to need further remark.

We are also satisfied, that before the 41 feet of lot 76 can be regarded as fully subject to the mortgage, Arnold must be paid the McClure debt, with interest; and it is not entirely clear that he should not also be reimbursed

*A mort'gee who is charged with rents upon the mortgaged property, should be allowed for expenditures made for the relief of the mortgaged property in the extinguishment of paramount liens.*

for the payment to Powell, with interest. It clearly appears that the McClure debt was paid by Arnold, for the sole purpose of acquiring Fisher's right; and although the Powell debt had been paid by him before, and under compulsion, it may be that Fisher being insolvent, his interest in this lot was looked to as furnishing some indemnity for that payment, and that it was in part on that account that Arnold procured the assignment from Fisher. This last claim, however, is not set up in the pleadings, nor is it averred by Arnold to have constituted a part of the consideration of Fisher's assignment. We should therefore regard it as improvident to direct peremptorily that this payment should be taken into the account without further investigation, even if the lot 76 is to be brought fully into the mortgage.

But we are of opinion, under all the circumstances of the case, that Arnold's purchase of Fisher's interest did not enure to the benefit of the mortgage, except so far as the same debts were secured in the mortgage, and also by the lien of Price on Fisher's interest in lot 76; that for the debt of $200 to Foot and Bowler, which is mentioned in both instruments, and for which Price was liable, the 41 feet remained bound in Arnold's hands; that the McClure debt being paid, and Price being indebted to Fisher in precisely the amount of his liability to Barr for Fisher, viz: $333, this debt in his own hands furnished all the indemnity he was entitled to, or could ask for that liability; that moreover, his lien for the $200 due to Foot and Bowler, was the only interest which he could subject to any of the mortgage debts, and as his other liens were in effect discharged by the payment of the McClure debt, and by his own indebtedness equal to his liability for the Barr debt, the fair presumption is, that he gave up the bond on Gano on the sole condition that he was to be indemnified out of this lot for his liability on the $200 note to Foot and Bowler.

It is true, Price in his deposition states that Arnold verbally promised as the condition on which the title of Gano was allowed to be made to him, that he would pay the debt of $257 to the complainants, and also another debt not mentioned in the bond to Fisher. But this

*A. mortgages lots 75 and 76, never having had the legal title to lot 75, and having before the mortgage exchanged 41 feet of it with B. for whom he was liable as surety, &c. and retaining the title bond, but giving his own bond to convey to B. when he should be reliv'd from certain of these liabilities. The mortgagee may, by fair arrangement with B. acquire the 41 feet, subject only to the indemnity reserved in the bond of A. to B. This interest of A. is all that his attaching creditors can reach in the 41 feet.*

statement is inconsistent with the import of the writings, and with the very nature of the case. Fisher or his assignee, Arnold, was by the terms of the bond, entitled to a conveyance, upon paying or procuring a release of the enumerated debts ; and Price had no equity to hold the lot or the title, when the debts were reduced down to an equality, with his own indebtedness to Fisher or his assignee. At any rate, there was no apparent motive, and none is assigned, for Arnold's undertaking to pay for the lot more than Fisher was bound to pay for it. And on the other hand, there is no reason to suppose that Price would give up a lien on Fisher's property, for the $200 for which he was bound for Fisher, and leave his own property exclusively subject to it.

As Fisher was in possession of the 41 feet of lot 76, Arnold cannot be regarded as an innocent purchaser, either by his mortgage or by the assignment of Gano's bond for title, which, as Price says, was made to perfect the mortgage. The assignment bears date shortly after the date of the mortgage, and long before the assignment of Price's bond to Fisher, and before the payment of the McClure debt. The assignment to Arnold of the bond on Gano, aided the mortgage in respect to the 41 feet, only so far as Price could have subjected that part of the lot No. 76 to the debts mentioned in the mortgage, that is, only so far as there was a lien for the $200. If Arnold had then acquired the legal title by virtue of the bond upon Gano, for which he gave nothing, he would have held it in trust for Fisher, to be conveyed upon his releasing Price from responsibility for the enumerated debts, and subject to Price's claim to indemnity; and his own claim under the mortgage, except for the $200 debt, would not have been enforcible on the 41 feet of said lot. His subsequent acquisition of Fisher's bond on Price, although it freed the 41 feet from all other liens, left it subject, as we have seen, to the lien for the $200 debt mentioned in the mortgage as due to Foot and Bowler, at least so far as to indemnify Price against that debt.

That debt was not paid by the purchase of the equity of redemption under the execution, because if there were no other reason, being secured by the mortgage the pur-

chase was invalid. But if it had been, or if it has been paid by Foley in payment of his purchase of the equity of redemption which belonged to Price, it was a payment by Price which entitled him to look for indemnity and re-payment, to the 41 feet of lot No. 76, and so it would be if it were paid by a sale of the other mortgaged property. This right Foot and Bowler may reach in consequence of their returns of no property, on the executions against Price, and appropriate to the payment of either of their debts which remain unpaid. And for the residue, they may subject whatsoever remains of the two lots, (exclusive of the 41 feet of lot No. 76,) after the balance due upon the mortgage is satisfied, so far as Price or Price and Montague had not disposed of the equity of redemption to Foley before this suit was brought.

The result of these views is, that Arnold should be regarded as holding the 41 feet of lot No. 76, as his own property, subject only to the charge of paying the amount of the $200 judgment of Foot and Bowler against Price, with the interest on the note to them for that sum; and if so much remain unpaid to the complainants, they are entitled to have the 41 feet sold to raise it; and the sum thus raised, together with such sum as they may have received from Foley in virtue of his *assumpsit* to pay them in his purchase of the interest of Montague and Price, will be credited on their two demands set up in the bill; for the residue, if any, they must look to the remaining equity of redemption in Price or in Price and Montague.

In taking the account under the mortgage, Arnold is to be credited by all payments made on the debts therein mentioned, with interest, except the debt for $200 to the complainants, and to be charged with all rents received by him from the mortgaged premises, exclusive of the 41 feet of lot 76, after deducting his expenditures as above referred to; and for the balance appearing to be due to him on the account thus stated, he should have a decree for the sale of the mortgaged premises, exclusive of the 41 feet of lot 76, or so much as may be necessary, unless by a given day, the same should be otherwise paid.

It will be seen from the foregoing positions, that we regard the bond from Price to Fisher as subject to a *fair*

arrangement between the parties, and that by the arrange-ment made, all equities upon the 41 feet, except those reserved in the transaction, were merged; whence it fol-lows that Barr was not a necessary party.

Wherefore, the decree is reversed and the cause re-manded for further proceedings, and decree in conformi-ty with this opinion.

*Goodloe* for plaintiff; *Harlan & Craddock* for defend-ants.