# Grigg, Adm'x *v.* Banks.

## *Redemption of Land.*

1. *The levy of an attachment on land creates a paramount lien.*—The levy of an attachment on land creates a lien which is paramount to any subsequent charge, or alienation caused either by the operation of law, or the act of the defendant.

[Grigg v. Banks.]

2. *The land may be alienated, subject to the lien.*—The power of the debtor to charge or alienate the property, in subordination to the lien, is ample and complete.   The lien necessarily takes effect from the day of the levy.

3. *The mortgagee is a trustee for the mortgagor.*—A mortgagee although clothed with the legal title is in a large sense a trustee for the mortgagor. To protect his rights he can remove prior incumbrances, but neither the mortgagor, nor any one else, can redeem without compensating the mortgagee.

4. *A creditor claiming the right to redeem must pay all lawful charges.*—A creditor claiming the right to redeem from him, must not only pay the sum bid at the sheriff's sale, with ten per cent. per annum thereon, but must also pay the mortgagee's debts, which are in the words of the statute, "lawful charges."

APPEAL from the Chancery Court of Montgomery.
Heard before the Hon. HURIOSCO AUSTILL.
The facts are contained in the opinion.

ELMORE & GUNTER, for appellant.—1. It is admitted by our own courts that a mortgagee may acquire and enforce against mortgaged premises a judgment lien for a distinct demand.—14 Ala. 483.   And when such lien is prior to mortgage, it vests in the purchaser the whole title, subject to redemption.—27 Ala. 197; 37 Ala. 354.   When a superior lien is enforced against property, the subordinate ones are destroyed, and the property is subject to redemption clear of such subordinate liens. — 11 Ill. 445; 13 Ill. 398; 51 Ala. ——.

2. No objection to the right of redemption can be urged other than those made at the time the offer to redeem is made.   None were then mentioned.—25 Ala. 393.   In this case the tender was properly made, and being rejected, and the proposed credit entered on a subsisting judgment, the complainant was really invested with the title.—*Lockett v. Hurt,* (in manuscript.)

3. It is insisted as a plain proposition that a purchaser must at all times be prepared to say whether he will accept, reject or respond to an offer of redemption.—39 Ala. 298.

4. Taxes accruing during the term of occupation are not enumerated among the charges allowed, nor do they add value to the estate, passing to the redeeming creditor.—14 Ala. 622.   The purchaser is entitled to rents and profits till a tender—27 Ala. 193—and taxes levied are personal charges against him.   The complainant has no right to claim the surrender of tax-titles held by appellee.—27 Ala. 455.

5. The only correct mode of reasoning concerning distinct rights united in the same person, is to contemplate and estimate the several rights as held by different persons.   The

[Grigg v. Banks.]

application of this plain rule relieves the case of complication.—Code, § 2955; 27 Ala. 193. There is no inconsistency in a person having a mortgage upon property for one debt acquiring another debt having a prior lien, and enforcing the latter.—14 Ala. 483.

6. If there be a merger between the equity of redemption purchased and a mortgage held by the purchaser, the rule is that the mortgage is extinguished.—1 Hill. on Mort. 329–30; ib. 338–40; 8 Metc. 290; 3 Powell on Mort. 1029, n. 1; 2 ib. p. 557a. A man may have two mortgages or two liens of any kind against land, and they may not merge, but when the paramount lien is made productive, the purchaser takes an absolute title, except as to the right of redemption. The sale is an extinction of both liens.—1 Ala. 728; Crocker on Sher. p. 251. The lien given by one execution and by levy of an attachment stand as judgment liens under English statutes.—2 Pow. on Mort. 558; 7 Bac. Ab. 101; 1 Sim. 344.

7. What is the law? We say that there is no policy or rule of the law which interdicts the mortgagee from buying a distinct debt with a superior lien, and enforcing it. We have argued this and cited a few authorities. The appellee has furnished no authority that even tends to the contrary, and none can be found.—2 Wash. Real Prop. p. 180 *et seq.;* 2 Spence Eq. Jur. 308–344 *et seq.;* 38 Ala. 629–30; 18 Ves. 384; 3 Pow. on Mort. 1088b.; 8 Ala. 876; 34 Ala. 91; 38 Ala. 345; 29 Ala. 703; 14 Ala. 483–514; 1 Hill. on Mort. 338 *et seq.;* Miller Law of Eq. Mort. 65; Coote on Mort. 394; 20 Wis. 576–85; 31 N. Y. 411; 6 Fla. Reps. 711; 7 Ired. Eq. 292.

DAVID CLOPTON, for appellee.—1. A creditor seeking to redeem can not apply in the first instance to a court of equity. The right to redeem is not perfect till all the statutory requirements have been performed, or a valid excuse for their non-performance, without fault on the part of the complainant.—27 Ala. 193–7.

2. Without any agreement as to time, Banks would have been entitled to reasonable time within which to ascertain the amounts he should be paid, and the value of permanent improvements.—25 Ala. 393–407; 30 Mich. 149. Section 2513 of the Revised Code naturally divides itself into two clauses: the former specifying the terms upon which a right of redemption is acquired, and the latter specifying the prerequisites to the vesting of title in the party redeeming, and to the execution of a conveyance to him.—35 Ala. 701. An

act necessary to give equity to a bill when subsequently performed, can not impart equity to a bill previously filed.—30 Ala. 330–4. Therefore, the appellee having accepted the offer, and the credit not having been actually given until after the bill was filed, the bill was without equity, and should have been dismissed.

3. A creditor proposing to redeem, must pay all lawful charges. The term, charge, has various significations.—1 Bouvier's Dict. 223. A mortgage is a charge on the property mortgaged.—33 Ala. 534–557. In the construction of a statute the legislature is presumed to use words in their proper signification, unless the contrary appears.—18 Ala. 276. Hence, the mortgages held by Banks, and the amounts paid by him to redeem the lands from tax sales were lawful charges which the appellant was bound to pay in order to redeem.—25 Ala. 393–407; 23 Barb. 490–7.

4. A statute may be extended or restrained by an equitable construction.—6 Port. 109. In the construction of a statute courts are often required to look less at the words than at the subject-matter—the consequences and effects, the reason and the spirit of the law.—20 Ala. 54–62; 1 Black. 55–61. A statute should be so construed as not to work injustice, and in its relations to other statutes indicating the policy of the statute.—1 Dev. & Bat. Law Rep. 52; 14 Ala. 476–81. Under the statute as it formerly existed, a plaintiff in execution would have the benefit of a deed of trust on paying off the debts secured by it.—2 Port. 315–22; 21 Ala. 288–293. This has been changed in some respects by the Revised Code, § 1611.

5. To permit appellant to redeem on terms offered in her bill would be assisting her to deprive the appellee of the security he had in the mortgages.—14 Ala. 733–37. After the law-day of the mortgages the legal estate vested absolutely in Banks. The mortgagor had nothing but an equity of redemption.—37 Ala. 354–358; 54 Ala. 309. It is a legal solecism to say a person can buy from himself his own property. Nothing passes by such a transaction.—6 Ala. 204–208.

6. An execution or the levy of an attachment does not give the plaintiff any right to or in the land of the defendant. It is a mere lien, a right to enforce the collection of the debt out of the property.—9 Ala. 656; 9 Ala. 114. The mortgagor had the right, before the sale, to redeem by paying the mortgage and the amount which Banks paid to procure the judgment, and he had the same right after the sale.

[Grigg v. Banks.]

37 Ala. 358. A mortgagor can not be stripped of his right to redeem by a sale of the mortgaged property to pay the debt secured by it.—37 Ala. 358.

7. No merger can take place unless two estates—a greater and a lesser—meet in the same person. But there are exceptions to this rule. If the owner has an interest in keeping these titles distinct, he has the right to do so.—1 Allen, 240–2; 8 Metc. 517. When the mortgage and equity of redemption become vested in the same owner, the mortgage will be extinguished or not, according to his intention, and in the absence of positive evidence of this intention will be presumed to correspond with his interest.—8 R. I. 548–53; 7 Greenl. 377; 18 Ves. 384; 34 N. H. 90–94.

BRICKELL, C. J.—The bill was filed by the appellant, for the purpose of compelling a redemption of lands sold at sheriff's sale under execution as the property of one Fleming M. Gilmer, and purchased by the appellee. The material facts shown by the pleadings and proofs, are, that on the 18th day of December, 1874, the appellant recovered a judgment in the Circuit Court of Montgomery county against said Gilmer, for the sum of three thousand dollars. The judgment was rendered in a suit commenced by attachment, a levy of the writ on the lands in controversy, having been made on the 23d day of June, 1873. Prior to that time, Holmes & Goldthwaite had caused an attachment to issue against said Gilmer, which on the 27th day of November, 1871, was levied on said land. On the 30th day of January, 1873, they obtained judgment in said suit, and on the 16th day of June following, under an execution issuing on the judgment, the lands were sold, and appellee became the purchaser, receiving a conveyance from the sheriff. After the levy of the attachment of Holmes & Goldthwaite, but before the issue and levy of the attachment of the appellant, Gilmer by his duly authorized attorney, had executed several mortgages by which the lands were conveyed to the appellee as security for debts owing him by said Gilmer. Before the sheriff's sale, the appellee had become the owner of the judgment of Holmes & Goldthwaite. The appellant claims she is entitled to redeem the lands, on paying the appellee the amount bid by him at the sheriff's sale, with ten per cent. interest thereon, and that she is not bound to pay the mortgage debt, and this is the controlling question the case presents.

The statute under which the right of redemption is claimed,

provides that where real estate, or any interest therein, is sold under execution, or by virtue of any decree in chancery, or under any deed of trust, or power of sale in a mortgage, the same may be redeemed by the debtor from the purchaser, or his vendee, within two years thereafter, on the payment or tender of the purchase-money, with ten per cent. per annum thereon, *and all other lawful charges.* A subsequent section, confers on judgment creditors, a like right of redemption, on the payment or tender of the amount bid for the land, ten per cent. per annum thereon, *together with all lawful charges,* and on offering to credit the debtor, upon a subsisting judgment with an additional sum, not less than ten per cent. on the original purchase-money.—Code of 1876, §§ 2877–89.

The levy of the attachment at the suit of Holmes & Goldthwaite, by the express words of the statute, created a lien on the lands for the satisfaction of the judgment the plaintiffs therein might obtain subsequently.—Code of 1876, § 3280. The lien was continuing and operative, paramount to any subsequent charge or alienation, which could arise by operation of law, or from the act of the defendant in attachment. *Randolph v. Carlton,* 8 Ala. 617. It was not however property, or a right of property—not strictly speaking a *jus in re, or a jus ad rem,* but a bare legal right, by due course of legal proceeding, on obtaining judgment, to charge the lands with its payment, in priority of all charges or alienations subsequent in point of time.—2 Story's Eq. §§ 1215–16; Freeman on Judgments, § 338. The lands remained liable to be levied on at the instance of any other creditor either by attachment, or under an execution issuing on a subsequent judgment. The power of the debtor to charge, or to alienate them, in subordination to the lien, was full and complete. The only restraint on the power, was that by its exercise the priority of lien created by the levy, could not be displaced or diminished, and whoever succeeded to the estate of the debtor, or acquired a charge on it, must take the estate *cum onere.* The subsequent mortgages to the appellee were valid and operative conveyances, transferring the legal estate in the premises, subject to the prior lien.—*Conard v. Atlantic Ins. Co.* 1 Pet. 445; *Addison v. Crow,* 5 Dana, 279; *Fitzgerald v. Bebee,* 2 Eng. (Ark.) 319; 1 Hill. Mort. 298; Drake on Attachment, §§ 222, 239; *Warner v. Everett,* 7 B. Monroe, 262.

The lien of necessity takes effect from the day of the levy. When the judgment was obtained, execution issued, and a sale made by the sheriff, the title of the purchaser had rela-

[Grigg v. Banks.]

tion to the day of the levy, and is paramount to that created by the mortgages.—*Randolph v. Carlton, supra; Perkins v. Reed,* 14 Ala. 231. The appellee, a mortgagee, had a clear legal right to disengage the premises from the prior incumbrance created by the levy of the attachment.—1 Story's Eq. § 1023; 3 Barb. 534; *Averill v. Taylor,* 4 Seld. 44; *Page v. Foster,* 7 N. H. 392; *Silver Lake Bank v. North,* 4 Johns. Ch. 370. His own safety, and the security of his debts, the full and free operation of the title the mortgages conveyed, would be thereby increased. A mortgagee, though clothed with the legal estate, is, in a large sense a trustee for the mortgagor. The only effect of his removal of prior incumbrances on the mortgaged premises, is, that he holds them in trust for the mortgagor, without acquiring thereby any right superior or adverse to that of the mortgagor, when he comes to redeem. Without compensation to the mortgagee, he will not be permitted to redeem.—*Arnold v. Foot,* 7 B. Mon. 66; *Cullom v. Erwin,* 4 Ala. 452. The purchase by the appellant at sheriff's sale, had no other effect than to remove the lien of attachment as a charge or encumbrance on the premises—it clothed him with no other right or interest than that of demanding compensation for the moneys properly expended in its removal. Though in a court of law, it may have clothed him with an estate in the premises, superior to that created by the mortgage, in a court of equity, he holds that estate as a trustee for the mortgagor, without right to derive from it any personal benefit, or a title antagonistic to that of the mortgagor.

A creditor claiming redemption from him, must therefore pay not only the sum he may have bid at the sheriff's sale, with ten per cent. per annum thereon, but must also pay the mortgagee's debts, which are in the words of the statute *lawful charges.* The word *charge,* is of very large signification, and in the statute its proper signification is, every lien, or incumbrance, or claim the purchaser may have upon the premises, and for which at law or in equity, he would be entitled to hold the lands as security, or to the satisfaction of which a court of equity would condemn them.—*Couthway v. Berghaus,* 25 Ala. 393. An attachment, or an execution at law, may be levied on real estate in which the defendant has an absolute, or qualified legal estate, or a perfect equity, having paid the purchase-money, or in which he has an equity of redemption. If the levy is on a perfect equity, and the purchaser is put to expense in acquiring the legal title, there would be no doubt of his right to demand reimburse-

ment of such expense, as a *lawful charge.* Or if it was an equity of redemption, and he discharged, as he had the legal right to do, the mortgage, his right to reimbursement as a *lawful charge,* would be undoubted. So, if he acquires the legal estate, and in his hands it stands simply as a security, whoever claims redemption must discharge the security. It is a principle too well settled, to be matter of controversy, and of very general, if not universal application, that a party fairly acquiring the legal estate, will not be compelled to part with it, until all charges or claims thereon, to which he is entitled in law or equity, are satisfied.—*Mitchell v. Brown,* 6 Cald. 505.

It is not necessary to consider any other question the record presents. There was no offer by the appellant either at the time redemption was claimed, or in the bill, to pay the mortgage debts, and without such offer she is not entitled to relief.

Let the decree of the chancellor be affirmed.

STONE, J., not sitting.

MANNING, J.—To the views of the Chief-Justice I add another.

The land in controversy was mortgaged in 1872, by the owner, one Gilmer, to secure payment of divers sums of money amounting to several thousand dollars, which he owed to appellee Banks. Taxes also had accrued, some of them for the years 1869, 1871 and 1872 against the land; and portions of it had from time to time before his purchase at the sheriff's sale, been sold by the tax-collector to other persons for the taxes. Banks finding the title incumbered thereby, bought from these vendees, respectively, the interests they had thus acquired. The sums paid to them, severally, were not large; and there is no evidence of fraud, or collusion, or of any improvidence in thus disencumbering the title, without litigation with the purchasers at the tax-sales.

For the same purpose of fortifying his title—Banks bought the judgment of Holmes & Goldthwaite with its older lien created by their attachment, and under it, caused the land to be sold, and became the purchaser of it; after which he bought it again for a sum of over $4,000 more, at a sale made under the mortgages to himself. The liens under which these several purchases were made, are not shown to have been invalid, and were all created long before appellant, Mrs. Grigg, obtained her judgment, or brought the suit in which it was rendered.

[Grigg v. Banks.]

Yet, because the title derived through the attachment, judgment and sheriff's deed in the suit, of Holmes & Goldthwaite against Gilmer, supported by a lien older than that of the mortgages, is thought to be unassailable, and in a conflict between it and the other, that title would probably prevail, appellant proposed—and her counsel strenuously insist that it is her right as a judgment creditor of Gilmer, under the redemption act, to purchase and have that particular title only, and no other,—by repaying to Banks the small amount he bid for it—with interest at ten per cent. a year, and by entering a credit of $2,500 on the judgment in her own favor, against the insolvent debtor, Gilmer, and by paying, under the denomination of " all lawful charges," any other expenses incurred by Banks in obtaining that title, or in making permanent improvements on the land. She distinctly repudiated all obligation or purpose to pay any of the mortgage debt to him, or to repay any of the money which he had in good faith expended in buying in the tax-titles.

It is clear, that if instead of having the land sold under the judgment and mortgages both,—Banks had merely entered satisfaction of the judgment, and had caused the land to be sold and had purchased it under the mortgages only, appellant, before she could redeem as a judgment creditor under the statute, from him, would have had to reimburse to him, as a part of the " lawful charges," what the judgment of Holmes & Goldthwaite, an incumbrance on his title as mortgagee had cost him ; and that he could also have interposed and required her to pay the entire mortgage debt. This is not disputed. But simply because—while he was owner of all these securities—Banks, according to the assumption of appellant's counsel, so unskilfully (not fraudulently) availed himself of them, as to have the land sold under them all and to become the purchaser at such sales, instead of discharging that one, the lien of which was the oldest, and buying under the mortgages only,—it is contended that a court of equity should hold that he had forfeited or wholly deprived himself of all benefit from his mortgages. The fallacy of the argument is apparent upon the mere statement of it. What could a court of equity do that would be more inequitable ?

If appellant had sued for the land as the statute in a proper case authorizes, at law, a court of chancery would be constrained, it seems to me, by its rules and principles, to interfere and enjoin the proceeding. It has the power, and will exercise it, when necessary, to correct blunders of the nature

of those imputed to Banks, and to save from the consequences of them.—*Stover v. Herrington, et al.* 7 Ala. 143; 1 Story's· Eq., (12th ed.) §§ 99, 138e, 138f, 167. These are not mistakes occurring in or affecting any contract, or through which any injury resulted to Mrs. Grigg.

Certainly, nothing could be more contrary to some of the universally accepted and best established maxims of equity law, than for a court of equity to interfere, in a case like the present, to set aside the legal rights, and superior equities, of a party in possession, and elevate above them a claim resting upon considerations which must be regarded as very much less meritorious. This, of course, does not refer to the claim of Mrs. Grigg against Gilmer,—but to the contention between her and Banks.

I concur in the decree of affirmance.