[Kelly v. Longshore.]

# Kelly *v.* Longshore.

*Bill in Equity to Foreclose Mortgage and Make Distribution of Proceeds of Sale of Lands.*

1. *Equity of redemption; what rights purchaser of, acquires.*—An equity of redemption in mortgaged lands is subject to sale under execution against the mortgagor, and the purchaser at the sale acquires all the right and interest remaining in the mortgagor, but nothing more, and he is entitled to redeem from the mortgagee, on paying or tendering the mortgage indebtedness.

2. *Bill to foreclose mortgage; who can not maintain.*—A subsequent judgment creditor of the mortgagor, having acquired a lien on the equity of redemption, by placing an execution on his judgment in the hands of the sheriff, may redeem from the mortgagee or his assignee, and then foreclose the mortgage, not only for the payment of the mortgage debt, but also for the payment of his unsatisfied judgment; but not having redeemed, he can not maintain a bill in equity to have the mortgage foreclosed, the lands sold, and the proceeds of sale applied, after payment of the mortgage debt, to the satisfaction of his judgment.

APPEAL from Tallapoosa Chancery Court.

Heard before the Hon. N. S. GRAHAM.

The appellant, John B. Kelly, filed this bill against Levi Longshore, Lehman, Durr & Co., Ethelred Massengale, and B. L. Dean, and prayed for the foreclosure of a certain mortgage to Lehman, Durr & Co., and a distribution of the proceeds of the sale. The material facts may be thus stated. The complainant on October 1st, 1881, recovered a judgment against Levi Longshore, in the Circuit Court, and execution thereon was placed in the hands of the sheriff on October 26th, 1881, which execution was returned no property February 1st, 1882. An *alias* was issued on March 16th, 1882, and was in the hands of the sheriff when the bill was filed.

Levi Longshore owned certain lands prior to February 25th, 1880, and on that day he executed to Lehman, Durr & Co. a mortgage covering them. Some payments had been made on this mortgage, but a balance remained due on it when the bill was filed. On December 21st, 1880, Levi Longshore sold a portion of the lands to the defendant Ethelred Massengale, Lehman, Durr & Co. releasing their mortgage as to that portion, and on the same day Longshore and wife made him a deed and he went into possession. On the same day B. L. Dean purchased another portion of the land from Longshore, situated in section five, and the south-east quarter of section

six, and received a deed and was put into possession. The balance of the land embraced in the mortgage consisted of the south-west quarter of section six, and was known as the Smith place. It was alleged in the answers that, about April, 1880, Longshore sold this land to his son, A. P. Longshore, in consideration of a debt due to him, and that soon after he took possession of them, and continued to own and occupy them up to March, 1882, when they were sold to B. L. Dean and he was placed in possession of them. No deed was made to A. P. Longshore, and Levi Longshore remained ostensibly in possession of the lands, and no visible change in the dominion over them took place. On March 16th, 1882, Levi Longshore and wife executed a deed to these lands to Dean, and on the next day Lehman, Durr & Co. transferred to him their mortgage. This mortgage has never been foreclosed, and is still the property of Dean. No fraud is alleged in the bill as to any of the various transactions.

On the hearing the chancellor dismissed the bill, and his decree is now assigned as error.

JOHN A. TERRELL, and W. H. BARNES, for appellant.—The bill in effect was a bill to redeem. Before the statute, the allegations of a creditor's bill were required to be specific as to the estate sought to be subjected, but under the statute it is sufficient to allege the supposed interest of the defendant, generally, and such a bill need not allege a fraud on the part of the defendant, or a concealment by him of property or effects with the intention to hinder or delay his creditors in the collection of their debts.—See Code, § 3886; *Brown v. Bates*, 10 Ala. 432.

W. D. BULGER, for Massengale.—Massengale had the legal title to the lands, with the possession, for nearly two years before the recovery of judgment by appellant. No fraud or other improper conduct is alleged in the bill, hence it is clear that as to Massengale's lands the decree of the chancellor is correct.

OLIVER & GARRETT, for Dean.—The bill is not a bill to redeem. Kelly does not show any title to the equity of redemption of Longshore, and any facts which entitle him to the relief prayed for; no fraud is alleged, nor does he show any right to attack any of the conveyances by which Longshore parted with the lands.

STONE, C. J.—After Levi Longshore mortgaged his lands to Lehman, Durr & Co., there remained in him only an equity of redemption. That mortgage was made February 25th, 1880.

Such equity of redemption was liable to the said Levi's debts, so long as it remained in him. It was subject to seizure and sale under execution at law, and a purchaser at such sale would have acquired all the right and interest which were in Levi Longshore at the time the lien attached. But Longshore's interest being an equity, the purchaser would have acquired only such legal title as he had, if he had any, and the equity of redemption.—Code of 1876, § 3209; *You v. Flinn*, 34 Ala. 415; *Childress v. Monette*, 54 Ala. 317; *Atchison v. Broadhead*, 56 Ala. 414.

If Kelly had pursued this course, his purchase would have put him in the shoes of Levi Longshore; he would have then owned the equity of redemption. That would have clothed him with the right to redeem from the mortgagee, to the same extent, and on the same conditions, as Longshore could have redeemed. Either, in order to redeem, must pay or tender the mortgage indebtedness. This right the law reserves to the mortgagor, unless it is waived or lost by some act or laches of his; and the execution purchaser succeeds to this right, and to nothing more. It would be an anomaly, if such purchaser could acquire greater rights by such purchase, than the execution debtor owned. Of course, we are considering cases, like the present, where no fraud is imputed.—Jones on Mortgages, §§ 1055, 1061, 1069; 3 Pom. Eq. § 1220, and note 1, p. 209; *Rogers v. Torbut*, 58 Ala. 523; *Grigg v. Banks*, 59 Ala. 311; *Smith v. Conner*, 65 Ala. 371; *Dozier v. Mitchell*, *Ib.* 511; *Garland v. Watson*, 74 Ala. 323.

So, Kelly, having acquired a lien on the equity of redemption, was himself authorized to redeem from Lehman, Durr & Co. or their assignee, and then foreclose, for the payment of the mortgage debt, thus made his own, and for the payment of his unsatisfied judgment.

In what we have said above, we have considered only the rights of the original parties to the transaction, without any reference to sales or transfers alleged to have been made by Levi Longshore of his equity of redemption. Considering the case in that light alone, the bill is without equity. It proceeds on the theory, that the lands are more than sufficient to pay the unpaid balance of the mortgage debt, and it seeks to have the mortgage foreclosed, the lands sold, and the balance, after satisfying the mortgage, applied to the extinguishment of complainant's judgment. The complainant is in no condition to pray for such relief. He claims no interest in the mortgage made to Lehman, Durr & Co., has no right to control it, and can not compel them nor their assignee to foreclose it. We have shown above what his rights are.

The bill in this case makes no charge of fraud or bad faith

[Whitlow v. Echols.]

in any one. It seeks to sell the land—four hundred and seventy acres—and, of the proceeds, to pay the balance due on the mortgage, and complainant's judgment. No semblance of right is shown to subject the lands brought by Massengale. They were sold and conveyed to him long before Kelly recovered his judgment, and no fraud is alleged or shown. The bill does not seek to condemn the unpaid purchase-money due from Massengale, even if that could be done in such a suit as this. Nor is there any ground shown for disturbing Dean's first purchase. The lands in section five, and in the south-east quarter of section six, must be eliminated from this contention. The several purchasers of those parcels have a good title, so far as this record discloses. The south-west quarter of section six—the Smith place—is differently situated. The only paper evidence, devesting the equity of redemption in this tract out of Levi Longshore, is his deed to Dean bearing date March 16th, 1882. Long before that time complainant had acquired a lien, by having execution on his judgment placed in the hands of the sheriff. The alleged sale from Levi to A. P. Longshore, if made as alleged, was attended with no visible change of possession or dominion, and furnished no evidence, either actual or constructive, that the right had passd out of Levi Longshore.—Wade on Notice, § 302; *McCarthy v. Nicrosi*, 72 Ala. 332. A sale made at that time under that execution would have conveyed all the title, except the mortgage interest. *Preston v. McMillan*, 58 Ala. 84. Whether that lien still exists we will not now consider. The bill is without equity.

Affirmed.