## WALKER, MEAD & CO. *vs.* BALL.

[BILL IN EQUITY FOR REDEMPTION OF LANDS SOLD UNDER EXECUTION.]

1. *Pre-requisites of right to redeem by judgment creditor.*—A judgment creditor, seeking to redeem lands sold under execution, either from the purchaser at sheriff's sale, or from another creditor who has redeemed from the purchaser, (Code, §§ 2120–22,) is not required actually to credit his judgment with an amount equal to ten per cent. of the sum originally bid for the land, in order to perfect his right of redemption, though such actual credit is necessary, if his offer is rejected, to vest in him the title to the land; nor is he required to pay the amount due to the other creditor, either on his original judgment, or on other judgments purchased by him.

2. *Response to offer to redeem.*—When a sufficient legal offer to redeem is made, either to the purchaser at sheriff's sale, or to a creditor who, has redeemed from such purchaser, and is at once rejected by him, he cannot retract his refusal on the next day, and claim that he should be allowed a reasonable time within which to make his response to the offer.

APPEAL from the Chancery Court at Tuskaloosa.
Heard before the Hon. JAMES B. CLARK.

THE bill in this case was filed by the appellants, on the 8th November, 1860, and sought a redemption of certain lands, which had been sold under execution against Robert P. McEwen, and purchased at the sheriff's sale by one Christian, who afterwards conveyed them to James H. Ball; and said Ball was the sole defendant to the bill. The material facts of the case, so far as they are necessary to a correct understanding of the legal principles involved, are stated in the opinion of the court. On final hearing, on pleadings and proof, the chancellor dismissed the bill; and his decree is now assigned as error.

E. W. PECK, for the appellants.
VAN HOOSE & POWELL, and W. MOODY, *contra.*

A. J. WALKER, C. J.—The bill in this case was filed by a creditor of McEwen, to redeem land which had been sold

under execution.   It alleges, that the land was purchased at sheriff's sale by one Christian, and that he executed a deed conveying the land to the defendant Ball, who, it seems, had, as a creditor, redeemed from the purchaser at execution sale.   The complainant, within two years from the sale, tendered to Ball the amount "he had to pay to obtain the land, with ten per cent. *per annum* thereon, and offered to credit the debtor with an amount equal to ten per cent. upon the sum originally bid for the land."   It is argued for the defendant, that these acts did not constitute a full compliance with the prescribed pre-requisites to a redemption, and that there was lacking the element of an *actual* credit of ten per cent. upon the amount bid at the sheriff's sale.   To the decision of this point, as well as of others which arise in the case, it is necessary that sections 2120, 2121, and 2122 of the Code, should be examined in connection, and in reference to each other; and it will promote comprehensibleness to present a literal copy of those sections, in juxtaposition with our comments upon them.   They are in the following words :

"§ 2120.  All judgment creditors of the debtor, who, without fraud or collusion, had obtained such judgment before the sale of the land, or within two years thereafter, except by confession of the debtor, may, in like manner, redeem the land from such purchaser, or any one claiming under him, by paying, or tendering, the amount bid for such land at the sale thereof, and *by further offering to credit the debtor, upon a subsisting judgment, with a sum at least equal to ten per cent. of the amount originally bid for the land;* and upon such payment or tender being made, and *credit actually given* to the debtor, the title to such land vests in the creditor, and the purchaser must convey to him such title as he has, at the costs of the creditor."

"§ 2121.  But, if the purchaser, or person claiming under him, *agrees to credit,* and *actually does credit* the debtor, upon a subsisting judgment, with the sum offered to be credited by the creditor, he may retain the land ; unless the creditor make a further offer to credit the debtor, upon a subsisting judgment, with an additional sum, not less than ten per cent. on the original purchase-money ; to which the pur-

chaser, as hereinbefore provided for, is required to respond, by offering to give the debtor a similar credit; and upon his failure to do so, and upon the credit *being actually given* by the creditor to the debtor, and the payment or tender of the purchase-money, with ten per cent. *per annum* thereon as aforesaid, to the purchaser, the title vests in such creditor."

"§ 2122. One creditor may, in like manner, within two years from the sale of the land, redeem it from another creditor; and in that case, the creditor offering to redeem must pay, or tender, to the creditor in possession, the amount he had to pay to obtain the land, with ten per cent. *per annum* thereon, and must offer to credit the debtor as provided in the preceding section."

Section 2120 authorizes a redemption by a creditor, from the "purchaser, or any one claiming under him." This section, unexplained, is in its language sufficiently comprehensive to include the case of a redemption from a creditor who had himself redeemed from the purchaser; for such creditor may be regarded as holding under the purchaser. But, if that section had embraced such a case, one creditor might have redeemed from the creditor who had previously redeemed, upon paying him the amount bid at the sheriff's sale, which would be less than the land cost him. It became necessary, therefore, to provide specially for that particular case; and that purpose is accomplished in section 2122, which requires a creditor, seeking to redeem from another creditor, to pay or tender to the latter the amount which he had to pay to obtain the land.

A redemption under section 2122 must be governed by precisely the same rules which are prescribed in section 2120, except that there is a difference as to the price to be paid or tendered to the person in possession. The proceeding under section 2122 must be in like manner with that under section 2120; and the regulations of section 2121, as to antagonistic biddings, apply to a proposition to redeem under section 2122.

Section 2120 requires the creditor coming to redeem, when making out his *prima-facie* case for a redemption, to *offer* to credit the debtor with at least ten per cent. of the

amount originally bid for the land. Section 2122, in like manner, requires an *offer* to credit. Neither exacts from the creditor the actual entry of the credit, as an indispensable pre-requisite to the completion of the *prima-facie* case of redemption, which imposes upon the person in possession the duty of conveying to him, or of responding under section 2120.

In *Moore & Lynes v. Gore*, (35 Ala. 701,) we decided, that a creditor, who had made the tender required, and offered to give the prescribed credit, might go into equity to compel a conveyance, without the previous actual making of the credit, where the proposition to redeem was rejected, and the person in possession failed to respond. The principle upon which that case goes is, that the redeeming creditor, when his proposition is rejected, invests himself, by his tender and offer to credit, with a right to go into equity, by tendering the money due to the person in possession, and offering to make the prescribed credit, and compel a conveyance. This decision is irreconcilable with the theory, that the credit must actually be made before the *prima-facie* case of redemption is made out, which imposes the obligation upon the other party either to convey or to respond by bidding under section 2121.

This view of the question is confirmed by the language of section 2121, which, after securing the privilege of responding to the creditor in possession, allows the creditor coming to redeem again to throw the *onus* upon him in possession, by *offering* to credit with an additional sum not less than ten per cent. on the original purchase-money. A farther confirmation is afforded in the same section by the fact that, when the party fails to respond, its mandate changes, and it exacts an actual entry of the credit, as one of the conditions upon which the title passes to the creditor seeking to redeem.

The objection presents itself, that section 2121 seems to require an actual credit to be made by the creditor in possession, who desires to respond to the *prima-facie* case made by the creditor seeking to redeem. It would be the grossest injustice to vary the character of the act to be done by the creditor in possession, in order to throw the *onus* back upon

the redeeming creditor, from that which was required on the part of the latter, to cast the *onus* upon the former. We do not think the section, when correctly construed, can be understood to contemplate any such thing. The first clause of the section does allow the purchaser, or person claiming under him, after a tender and offer have been made under section 2121, to retain the land, if he "agrees to credit, and actually does credit the debtor," unless he is met by a new offer on the part of the creditor seeking to redeem. If this clause could be detached from the context, and considered by itself, it might be regarded as making an actual credit, in contra-distinction to an offer to credit, an indispensable element in the response necessary to cast the duty of making a farther bid upon the other party. But it can not, according to any sound canon of construction, be so detached. It is not only to be construed in reference to the context, but so as to harmonize it, if possible, with the other clauses, and with the spirit and intent of the law. *Brooks v. Mobile School Comm'rs*, 31 Ala. 227 ; *Thompson v. State*, 20 Ala. 54; *Huffman v. State*, 29 Ala. 40. Now, the same section, in words following directly after the first clause, allows the creditor seeking to redeem, by an offer to cast the duty upon the creditor in possession of making a farther bid, and then allows the creditor in possession, *by an offer*, to cast back the duty of making a farther bid. There would be an absurd inconsistency in the section, if it were understood to make an actual credit indispensable in the bid authorized by the first clause, and to dispense with the necessity of it in all subsequent bidding.

The obscurity in the first clause of section 2121 has grown out of the effort to condense into it two distinct things—the offer necessary to constitute a bid, and the actual making of the credit, which is necessary to authorize him to retain the land. The construction which harmonizes with the intention of the law-maker, and with the other parts of the law, is, that it makes an offer sufficient to cast upon the other party the *onus* of responding, and then, if the other party fails to respond, requires an actual credit, as the condition upon which the land may be retained. The scheme of the three sections (2120, 2121, 2122) is this, that

a bidding may be had between the creditor coming to redeem, who must make the first proposition, and the purchaser or person claiming under him (being a judgment creditor), or the creditor who has previously redeemed. In the bidding authorized by these sections, the antagonistic parties meet each other with offers to credit, as directed in the law, until one or the other ceases to respond. Then it becomes the duty of the creditor coming to redeem, if he is the party making the last proposition, to actually make a credit, covering all the amounts proposed or offered by him, if the other party will convey, as the law requires. If the other party will not convey, he may nevertheless enter the credit, and thereby invest himself with the title; or he may, as decided in *Moore & Lynes v. Gore, (supra,)* withhold the *actual* credit, and go into equity to compel a conveyance.

The theory, that each successive response must be accompanied by an actual credit, is not only without warrant in the language of the statute, but would lead to obvious injustice, and to a defeat of the cardinal purpose of the law. A creditor, having responded with credits until his judgment was exhausted, would accomplish nothing, if his adversary, having a larger judgment, could make another response. Thus, upon the theory that actual credits must be made at every bid, a creditor might lose his entire judgment, and get nothing whatever in return. The effect of such a theory would be to prevent propositions to redeem by any person other than one having a judgment of such an amount as to command his adversary's; the purpose of the law to encourage rival biddings, whereby the full value of the land would be secured to the debtor, would be contravened; and the intention to prevent the sacrifice of real estate, declared in the original enactment in 1842, would not be promoted.—Clay's Digest, 502, § 1.

It is contended for the defendant, that the creditor coming to redeem must not only make the required tender and offer to credit, but must pay to the adverse party the judgment which he may hold against the debtor. A similar position was taken in the case of *Cooley v. Weeks,* (10 Yerger, 141,) under a statute strikingly like ours. Cooley, the debtor, applied, through an agent, to redeem his property,

which had been sold under execution. The property was held by a creditor, who had redeemed from the purchaser. To him the proposition to redeem was made, and by him it was rejected, upon the ground that he had an unsatisfied judgment, the payment of which was a condition precedent to a redemption. The court held, upon the authority of a previous decision, that the creditor who had redeemed had a right to respond, by an offer to credit his judgment, to the proposition of the debtor to redeem, just as he would have had if the proposition had come from another creditor. The Tennessee case, therefore, was the same in principle, as if a creditor had been seeking to redeem from another creditor, and the question was identical with that now presented. The supreme court of Tennessee said, that the creditor holding the property " acted upon the opinion, that the debtor had no right to redeem until the whole debt" was paid, but that in that he was clearly mistaken ; and it was decided, that a tender, not covering the debt due, was sufficient. Thus, the point has been adjudged against the party who makes it, in the State from the judicial annals of which, on account of the similarity of the statute, we would expect authority for the construction of our law.

Besides, our statute prescribes what is necessary to a redemption, and in no wise includes the payment of the debt as a requisite. To impose such a burden upon a party coming to redeem, would simply add another clause to the statute, and would, to that extent, invade the province of the law-making power. And to make a payment of the debt necessary, would be to depart from the policy of preventing the sacrifice of the property sold. If a creditor should happen to hold the land, whose judgment exceeded its value, no person would redeem, and he would be permitted to retain the land, no matter at how great a sacrifice it had been sold. There are other answers which might be made to the position taken for the defendant, but we cannot think it necessary to say more upon the subject.

But the farther position is taken, that the defendant had purchased one of his judgments; that the judgment so purchased was an incumbrance upon the land; that sec-

Walker, Mead & Co. v. Ball.

tion 2120 requires the creditor proposing to redeem to pay all "lawful charges," and that he was therefore entitled to be reimbursed what he had paid for the judgment. This argument is unsound, because, in this State, since the adoption of the Code, judgments have no lien upon land, and are, therefore, no incumbrance upon it. While we make this brief reply to the argument, we do not mean to affirm, that there are not other answers to it.

As the result of this too tedious examination of the law of redemption, we decide, that the plaintiffs' proposition to redeem was in strict compliance with the statute. This proposition having been rejected, the complainants had a right to relief in chancery, unless the other party met their proposition by an offer authorized by the statute. The defendant did not respond by offering to credit the debtor as directed in section 2121; but met the complainant's proposition to redeem by a distinct refusal, unless the complainant would pay him the amount of his judgment. He had no right, as we have seen, to impose such a condition upon the complainant, and the latter was under no obligation to comply with it. There was, therefore, nothing done at the time when the complainant's proposition was made, to prevent his equitable right as a redeeming creditor from attaching.

The complainants' proposition was made on the last day of the two years to which the right of redemption was limited. On the next day, it is said, that the defendant did respond, by crediting his judgment; and it is contended, that he was entitled to a reasonable time within which to respond; that, under the circumstances, the next day was within a reasonable time; and that, therefore, the response on that day was in time, notwithstanding the period of two years had expired. When the defendant made his credit, he still insisted, as indeed he does in his answer, that the complainant had no right to redeem, without paying his debt, and announced his purpose not to convey unless such payment was made. We shall not argue, nor decide, whether the defendant could, under any circumstances, make a legal response after the expiration of the two years; nor whether it was his duty, at all events, to respond imme-

diately; nor shall we decide whether the illegal exaction, that the complainant should pay off the defendant's judgment, which accompanied the response of the latter, affected the legality of such response. It is not necessary for us to decide those questions. Whatever the law may be, as to the right of a party, from whom a redemption is sought, to delay for a reasonable time his reply to a proposition of redemption, we entertain no doubt, that if he, without asking time, or pleading its necessity, does make a prompt and decisive reply, he cannot afterwards, and on a subsequent day, retract his reply. The defendant, at the time when the offer and tender were made, responded with a refusal, which was absolute, except that he professed a willingness to convey upon the payment to him of his judgment. He claimed no delay for the purpose of considering or counselling as to his reply. He only asserted the necessity of going to Tuskaloosa, which was some miles distant, to ascertain the amount of his judgment; but he appears to have been prompt and decisive in the rejection of the proposition made. We cannot think that it was permissible for the party, on the next day, to retract his reply thus made, divest the rights which were thereupon called into existence, and make a different reply attended by different results.—See *Cooley v. Weeks, supra.*

But, if it be conceded that the defendant's response on the next day was permissible, it would also be allowable for the complainant to meet that response with another; and that he seems to have done, by proposing to credit his judgment with $910, which would be more than the minimum prescribed by the statute.

There is not in the record any note of the testimony; nor is there any evidence in the record. There is a consent copied into the record; but it does not appear to have been given in evidence, or brought to the chancellor's attention. We have therefore decided the case upon the statements in the bill and answer, and inferences which we deem legitimate. The result would not have been changed, if we had looked to the written consent, We deem it proper to remark, that we have not felt under obligation to discuss points not noticed in argument.

Reversed and remanded.