# First National Bank of Anniston *v.* Elliott *et al.*

*Bill to redeem Land sold under Mortgage.*

1. *Judgment creditor redeeming land sold under mortgage, not required to pay balance due on mortgage debt.*—As against a judgment creditor of a mortgagor, offering to redeem from the mortgagee who purchased at his own foreclosure sale the land mortgaged, the unpaid balance of the mortgage debt does not constitute, within the meaning of the statute, (Code §§ 3507-3510), a "lawful charge," which the judgment creditor is required to satisfy, as a condition precedent to effectuate his right to redeem. (TYSON, J., *dissenting*).

2. *Husband; when proper party in action to redeem from wife.* Where a bill is brought to redeem land sold under mortgage and purchased by the mortgagee who was a married woman, and it is averred that said purchaser at the foreclosure sale executed a contract of sale of the mortgaged land to a sub-purchaser, and her husband joined in the execution of the contract, he is, if not a necessary party, not an improper party to the bill which prays that the equities of all the parties be adjusted, and that upon redemption, the husband be required to join in a deed with his wife.

APPEAL from the City Court of Anniston, in Equity. Heard before the Hon. JAMES W. LAPSLEY.

The bill in this case was filed by the appellant, the First National Bank of Anniston, against the appellees, May R. Elliott, John M. Elliott, A. G. Donehoo and Alfred H. Smith. The purpose of the bill and the facts of the case are sufficiently stated in the opinion. The respondents demurred to the bill upon the following grounds: "1. For that it appears from said bill that complainant refuses to tender or pay the balance of the mortgage debt, secured by the several mortgages on the property sought in the bill to be redeemed. 2. For that it appears from said bill that complainant does not offer, but refuses to pay, the balance of the mortgage debt on said property sought to be redeemed, the same being a lawful charge on said real property. 3. For that it appears from said bill that complainant does not offer to do equity, in that it seeks to redeem the real estate mentioned, without offering to pay the balance of the mortgage debt not bid at the sale. 4. Defendant, John M. Elliott separately assigns the following: For that there is a misjoinder of parties defendant as to him, there being no allegation that he has any interest in the subject matter or result of the suit."

Upon the submission of the cause upon these demurrers, the court rendered a decree sustaining them. From this decree the complainant appeals and assigns the rendition thereof as error.

A. P. AGEE, for appellant.—A lawful charge is every lien or incumbrance or claim the purchaser may have on the premises, and for which in law or equity he would be entitled to hold the lands as security, or to the satisfaction of which a court of equity would condemn them. *Harris v. Miller*, 71 Ala. 29; *Lehman v. Collins*, 69 Ala. 393; *Cauthway v. Berghaus*, 25 Ala. 393. The charge may, and will, vary with different purchasers.—*Harris v. Miller, supra.* It seems utterly inconsistent to say, when a mortgagee has purchased at her own sale, and a redemption is sought by a creditor, whose judgment is as meritorious, under this section 3514, as the unsatisfied

balance of the mortgage debt, that before obtaining the benefit of the redemption statutes, the judgment creditor must pay off the balance of the mortgage debt. If it must be paid, then why? Did not the mortgagee, when she foreclosed her mortgage, foreclose her lien on the premises, and is she not now absolute owner of the property.—*Cramer v. Watson,* 73 Ala. 127; *Spoor v. Philips,* 27 Ala. 193.

The mortgage did stand as security for the indebtedness to Mrs. Elliott, but when she foreclosed her mortgage, it became an executed contract; the mortgage no longer standing as security, but it operated as a conveyance of the legal title, cutting off the equity of redemption of the mortgagor, and allowing the purchaser to take possession—there being no mortgagor, nor mortgagee.—*Gamble v. Caldwell,* 98 Ala.. 579, showing that when a mortgage has been foreclosed, the contract is executed. If the mortgage contract is executed, we ask how can the mortgage debt be still a charge on the lands when redemption is sought by a judgment creditor whose claim the statute says is as meritorious as the unsatisfied balance due the purchasing mortgagee? The foreclosure and sale of mortgaged premises for the part of the mortgage debt exhausts the lien of the mortgage.—*Curtis v. Cutler,* 37 L. R. A. 737. A sale of land under an execution extinguishes the lien on the lands sold.—Black on Judgments, § 479.

Again we say that to require a creditor to pay the balance of the mortgage debt would impose another burden upon one coming to redeem.—*Walker v. Ball,* 39 Ala. 298. The purpose of the statute would be entirely defeated if a mortgagee was authorized in the mortgage to purchase at his own sale under the powers.—*Knox v. Armistead,* 87 Ala. 511; *Dozier v. Mitchell,* 65 Ala. 511; *Cohen v. Virginia,* 6 Wheat. (U. S.) 399.

. Several cases in other jurisdictions have settled this contention in our favor, and as we understand them, they have gone further than we contend for. We invite this court's attention particularly to the following cases: *Willis v. Miller,* 23 Ore. 352; *Ogle v. Koerner,* 140 Ill. 170; *Clayton v. Ellis,* 50 Iowa 590; *Escher v. Simmons,* 6 N. W. Rep. 274.

[First National Bank of Anniston v. Elliott *et al.*]

BLACKWELL & KEITH, *contra.*—The sole question in the case is, is the balance of a mortgage debt where the mortgagee buys at his own sale, a lawful charge, which a judgment creditor is bound to pay in order to redeem the property from such mortgagee? We answer in the affirmative. Whether it was a lawful charge depended upon what were the rights of the immediate parties to the mortgage in and to the land. When a mortgage was accepted as a security for the debt, the right to foreclose and realize upon her security, we may infer, was believed by the mortgagee to add to its value, and it would be singular indeed if by the exercise of a function which was essential to render the security effective, she would thereby destroy it. Prior to a foreclosure the entire debt of the mortgagee must be paid. If the statutory right of redemption was given to prevent a sacrifice of the debtor's or mortgagor's property, and is for his benefit, he should not be required to pay the balance of the mortgage debt and the judgment creditor not be required to pay it.—*Grigg v. Banks*, 59 Ala. 311; *Cramer v. Watson*, 75 Ala. 127; *Childress v. Monette*, 54 Ala. 317; *Otis v. McMillan*, 70 Ala. 59; *Aiken v. Bridgford*, 84 Ala. 295; *Powers v. Andrews*, 84 Ala. 289; *Harris v. Miller*, 71 Ala. 26; *Fouche v. Swain*, 80 Ala. 151; *Lehman v. Robinson*, 59 Ala. 219; *Owen v. Kilpatrick*, 96 Ala. 421; *Bibb v. Bibb*, 79 Ala. 444; *Matheson v. Hearin*, 29 Ala. 210; *Bennett v. Bennett*, 34 Ala. 53; *Reynolds v. Baker*, 6 Cald. (Tenn.) 221; *Seale v. Mitchell*, 5 Ga. 403; *Douglass v. Pike*, 101 U. S. 687.

DOWDELL, J.—The present appeal is prosecuted from the decree of the city court sustaining respondent's demurrers to the complainant's bill. The facts pertinent to the question involved, as stated in the bill, are substantially as follows: On the 16th day of May, 1890, J. R. Robinson loaned to Algernon Culberson and E. J. Cobb $3,500 for three years, and took as security a mortgage on a lot in the city of Anniston, Ala., on the corner of Tenth Street and Quintard Avenue, fronting 30 feet on Tenth Street, and running back 85 feet, said real estate being a part of lots 5 and 6 in block 16. On October

24th, 1890, said Robinson transferred this debt and mortgage to May R. Elliott, one of the appellees in this case. Some time prior to the 13th of July, 1893, the Corning Land, Industrial & Trust Company assumed the payment of said debt, the property embraced in said mortgage having been conveyed to it. On that day, desiring an extension of said debt to the 16th of May, 1894, the said Corning Land, Industrial & Trust Company mortgaged to said Elliott, a lot adjoining that above described on the west side, fronting 28 feet on Tenth Street and running back 85 feet. On the 1st of April, 1895, said company, again desiring an extension of said debt, mortgaged to said Elliott a part of lots 7, 8, 9 and 10 in block 16, with the livery stable thereon. The Corning Land, Industrial & Trust Company, having made default in the payment of said debt, and said Elliott having duly advertised the lands embraced in said several mortgages, sold the same at public auction to the highest bidder for cash on the 7th of April, 1897, and at said sale, said May R. Elliott, being authorized under the terms of the mortgage to bid and purchase at the foreclosure sale, became the purchaser of the property in the first described mortgage for $500, in the second mortgage for $15, and in the third mortgage for $1,100. Since the foreclosure she has sold the property mentioned in said mortgages to A. G. Donahoo for $4,000, one-fifth cash, and the balance in equal installments in one, two, three and four years, executing to said Donahoo her bonds for title, and said Donahoo has sold the property mentioned in the mortgage first described to A. H. Smith for $1,000, one-fifth cash and the balance in equal installments in one, two, three and four years, the said Donahoo executing to said Smith his bond for title. On the 8th of October, 1896, appellant, the First National Bank, obtained a judgment against said Corning Land, Industrial & Trust Company for $6,080.98 and costs $9.20, upon which execution was issued October 19th, 1896, and returned December 7th, 1896, "No property found." Under this judgment the appellant has filed the bill in this case, asking to redeem all of said property embraced in all of said mortgages foreclosed and bought in by May R. Eliott as

aforesaid, offering to pay the amounts bid for said several lots, with ten per centum interest per annum, and lawful charges, and the cost of permanent improvements, but expressly declining to pay the balance due on the mortgage debt to May R. Elliott, after crediting the amounts of said purchases. Appellee filed demurrers to said bill based upon the ground that appellant did not offer to pay the balance of her mortgage debt, which, as she insists, was a lawful charge upon the land.

Thus it will be seen that the question presented by the record for our determination is as to what, within the language of sections 3507-3510 of the Code of 1896, constitutes a *"lawful charge."* While cognate questions have been passed upon and decided by this court, yet the exact question as presented by the facts in this case has never been decided, and it may be said that up to this time the question is *res integra.*

There is no difference between counsel in this case as to the real issue. That issue is, whether the unsatisfied balance of the mortgage debt is a "lawful charge" against a judgment creditor seeking to redeem from the mortgagee who purchased at his own foreclosure sale. If it is a lawful charge, then this case, as to that proposition, should be affirmed. If it is not, it should be reversed.

Generally lawful charges, such as the party coming in to redeem must pay, or offer to pay, may be divided into two classes: (1) All liens, legal or equitable, which the purchaser at the foreclosure sale may have upon the premises and for which either at law or in equity he would be entitled to hold them as security; (2) all claims of any kind to which a court of equity would condemn the premises in the hands of the person redeeming after he had acquired the title.

In *Grigg v. Banks,* 59 Ala. 311, it was said by this court: "The word charge is of very large signification, and in the statute its proper signification is every lien or incumbrance or claim the purchaser may have upon the premises, and for which, at law or in equity, he would be entitled to hold the lands as security, and to the satisfaction of which a court of equity would condemn them."

Again, in *Lehman v. Collins,* 69 Ala. 127, it was said: "Every lien, or incumbrance, or claim for which the purchaser would be entitled to hold the land as security, and to which a court of equity would subject them, whoever comes to redeem is bound to satisfy. But it is only liens, legal or equitable, claims capable of enforcement, the creditor coming to redeem can be required to satisfy."

In *Cramer v. Watson,* 73 Ala. 127, the same definition of "lawful charges" is given as quoted above from *Grigg v. Banks.*

In *Parmer v. Parmer,* 74 Ala. 285, in an opinion by SOMERVILLE, J., wherein it was decided that the ordinary debts not covered by the mortgage were not lawful charges against the mortgagor seeking to redeem from the mortgagee, it was said: "Lawful charges embrace only such claims or demands as are in the nature of an incumbrance or lien for which the purchaser would be entitled to hold the land as security;" citing *Lehman v. Collins, supra; Grigg v. Banks, supra; Walker v. Ball,* 39 Ala. 298 and *Cauthway v. Berghaus,* 28 Ala. 393. Judge SOMERVILLE then adds: "It is manifest that if the sets-off claimed by the mortgagee before the register had been allowed, the legal effect would have been indirectly to create them liens upon the mortgaged property, in the face of the fact that there was no agreement between the parties to this effect."

In *Graham v. Ware,* 79 Ala. 192, CLOPTON, J., in deciding that statutory damages and protest fees on a bill of exchange were "lawful charges," says: "The statutory damages accruing on the protest of a bill of exchange constitute a part of the debt and are recoverable in an action on the bill. It is true the acceptor is not personally liable for them. They are, however, secured by the mortgage so far as respects the property of Robert Ware, equally with the principle and interest, and in ascertaining the amount to be paid by the complainant on redemption, and the extent to which his property shall be applied in exoneration of hers, *all claims and demands* having by the mortgage a *valid lien* on his property must be taken into the estimate."

In *Harris v. Miller,* 71 Ala. 26, in an opinion by Judge BRICKELL, who also delivered the opinion in the cases of *Grigg v. Banks, Lehman v. Collins* and *Cramer v. Watson,* after defining "lawful charges" in almost the same language as used in *Grigg v. Banks,* then adds: "The charge may and will vary with different purchasers."

Under subdivision "(1)," the lien discharged by the purchaser must not only be an existing, valid lien, but such that its satisfaction and removal is necessary to the full and absolute ownership and enjoyment of the property by the purchaser. It makes no difference whether the purchaser be the mortgagee himself or a stranger, such lien or incumbrance, when paid off by the purchaser, constitutes a "lawful charge" within the meaning of the statute. The measure of the amount of the "lawful charge" which the redemptioner is required to pay is not determined by the sum or amount originally secured by the lien, but by the amount actually paid by the purchaser for its discharge and removal. It is to this extent that the purchaser, in a sense, becomes subrogated to the rights of the original lienor, and no further.

It is, therefore, not an unimportant inquiry as to whether, upon the foreclosure of her mortgage by the appellee, Mrs. Elliott, the mortgage lien became thereby extinguished. When Mrs. Elliott foreclosed her mortgage, buying in the property at the foreclosure sale as she was authorized to do under the mortgage contract, she went into the possession of the property as absolute owner, discharged of all lien which existed under the mortgage before foreclosure.—*Cramer v. Watson, supra; Spoor v. Phillips,* 27 Ala. 193.

We think the proposition too well settled to admit of doubt that the sale of land under execution or by foreclosure of a mortgage extinguishes the lien, and this is true, whether the entire debt secured be satisfied or not. Black on Judgments, § 479; *Curtis v. Cutler,* 37 L. R. A. 737; *Willis v. Miller,* 23 Ore. 352; *Ogle v. Koernor,* 140 Ill. 170; *Clayton v. Ellis,* 50 Ia. 590; *Tuttle v. Dewey,* 44 Ia. 306.

In *Ogle v. Koernor, supra,* it was said: "A mortgage, or as in this case, a deed of trust in the nature of a mort-

gage, vests in the party secured by it a lien upon the mortgaged premises. By virtue of that lien the mortgagee is entitled to have the mortgaged property sold under a decree of foreclosure and the proceeds of the sale applied to the payment of the debt secured. This is the mode prescribed by law for the enforcement of the lien; and when the lien has been once enforced by the sale of the property, it has, as to such property, expended its force and accomplished its purpose, and the property is no longer subject to it. When the redemption is made by the party primarily liable on the mortgage debt, it may be that the same property may be resorted to again for the purpose of subjecting it to an unpaid balance due on the mortgage debt, but it is not because of any right to enforce the mortgage lien against the property the second time, but because of the rule of law which subjects all the property of the debtor to the payment of his debts until they are satisfied in full. But where the redemption is made by a party not liable upon the mortgage debt, the mortgage lien having been exhausted, the mortgaged property cannot be subjected a second time to the satisfaction of the same lien." The principle here laid down is in harmony with the proposition laid down in *Harris v. Miller, supra,* that the "lawful charge" "may and will vary with different purchasers." It would not for a moment be contended that the unpaid balance of the mortgage debt after foreclosure sale would constitute a "lawful charge" against a creditor offering to redeem from a stranger who purchased at the foreclosure sale.

In *Harris v. Miller, supra,* which was the case of a mortgagor seeking to redeem from the mortgagee who purchased at the foreclosure sale, it was decided that the unsatisfied balance of the mortgage debt was a "lawful charge" which the mortgagor must pay before his redemption could be effected; but it must not be overlooked that this conclusion was put upon the distinct proposition that the title acquired by the mortgagor upon redemption would at once inure to the benefit of the mortgagee, and for that reason, as to the unpaid balance of the mortgage debt, the mortgage would be a valid and

operative security. It is not pretended that a lien would still exist under the mortgage upon the property after a valid foreclosure sale; but a different and distinct principle of equity is involved, growing out of the relation existing between the purchaser, who is the mortgagee, and the mortgagor, seeking to redeem, and would be inapplicable to a different purchaser than the mortgagee, or a different person seeking to redeem than the mortgagor, or one claiming under him.

In the discussion of this phase of the case, which might properly fall under subdivision "(2)" as stated above, i. e., all claims of any kind to which a court of equity would condemn the premises in the hands of the person redeeming after he had acquired the title, it will be well to take into consideration the object and purpose of the enactment of this statute of redemption. The first act on the subject of redemption was passed January 1st, 1842, and was entitled, "An act to prevent the sacrifice of real estate."—Clay's Dig. pp. 502-3. There have been some changes in the terms of this original statute since 1842, but no substantial or material change has occurred.—Code of 1852, §§ 2118-20; Code of 1867, §§ 2511-13; Code of 1876, §§ 2879-81; Code of 1886, §§ 1881-83; Code of 1896, §§ 3507-10. All of these sections of the various Codes are the same, and in effect are the same as the act of 1842, in so far as the principle involved in this case is concerned. They all have the same purpose as the original act, the primary object being to prevent a sacrifice of the real estate of the debtor, and thereby enable the debtor to pay with his property his indebtedness to the fullest extent of its value, as well as to afford to his other creditors an opportunity to collect their debts by bidding at its full value. In determining whether the unsatisfied balance of the mortgage debt constitutes a "lawful charge" within the meaning of the statute, the primary purpose of the statute should be borne in mind. The present case arises under section 3510 of the Code of 1896, which provides for redemption by the creditor. This section contains the same phrase, "lawful charges," as contained in section 3507, which provides for redemption by the mortgagor, debtor, or person holding under

him.    It is a general rule of construction that words or phrases twice used in the same statute are presumptively used in the same sense, and, ordinarily, should receive such construction; but the rule is not an unbending one, or without exception.    Without doing violence to any cardinal rule of construction, when possible the statute should receive that interpretation which tends to promote the ends for which it was created, and not one which would render it possible to pervert it into a means of oppression of that class for whose benefit it was passed.    Where the statute is open to a construction that is in harmony with its spirit and promotive of its manifest aim and object, in order to attain the ends for which it was enacted such construction should always be given it by the court.    It would be difficult to give the phrase, "lawful charges," an absolute meaning, alike applicable to all cases.    That the very language itself leaves it open to interpretation by the court seems clear, and it can be safely asserted from the decisions of this court that in giving this phrase interpretation, the situation of the parties must be taken into consideration.

Conceding that the primary object of the statute was for the benefit of the debtor, it is urged by counsel for appellee in argument that to require the mortgagor, offering to redeem from the mortgagee, purchaser under the foreclosure sale of the mortgage, to pay the unsatisfied balance of the mortgage debt as a "lawful charge," and not to require the creditor, seeking to redeem, to pay such unsatisfied balance, would be conferring a greater benefit upon the creditor than upon the debtor for whose protection the statute was enacted.    This contention, however plausible it may appear upon a casual consideration, is superficial and not supported by sound reasoning.    An example may here serve to illustrate the fallacy of the position taken:    A mortgages to B his land for $10,000, that being the value of his property.    C is also a creditor of A for $1,000.    A makes default in the payment of the mortgage debt, and the same is foreclosed by the mortgagee, and at such sale the mortgagee becomes the purchaser for $5,000, one-half of the actual value of the property.    Under the equitable principle,

growing out of the relation between the mortgagor and
mortgagee, as laid down in *Harris v. Miller, supra,* the
mortgagor A coming into redeem must pay the balance
of the mortgage debt.    This he is unable to do, and the
result of his inability is a loss to him of one-half the
value of the property, which is sacrificed by his misfor-
tune without lessening his debt to his other creditor, C.
Upon the creditor C coming in to redeem, under section
3510, in addition to the payment of the purchase price
bid with 10 per cent per annum thereon, together with
all other lawful charges, he is further required to credit
his judgment against the debtor with an amount not less
than ten per cent. of the price bid.    It is evident that if
the creditor be required to pay the unpaid balance of the
mortgage debt as a "lawful charge" and in addition give
to the debtor the credit imposed by the statute, such
creditor would be requireed to pay more than the value
of the property in order to redeem the same.    And it is
hardly reasonable to suppose that any creditor in the
given case would undertake such redemption; nor is it
reasonable to conclude that it was the intention of the
law-making power in giving the creditor the right to
redeem at the same time to make such right a practical
failure.    It is equally clear that in giving to the creditor
the right to redeem without requiring the payment of the
unpaid balance of the mortgage debt operates to the bene-
fit of the debtor and without working any prejudice or
injustice to the mortgagee, purchaser.    It should not be
overlooked that under section 3514 of the Code of 1896,
which forms a part of the chapter relating to redemp-
tion, the mortgagee, as to the unpaid balance of the mort-
gage debt after foreclosure sale, is himself a creditor
within the meaning of the statute, and as such creditor,
upon the offer of another creditor to redeem, he has a
right to avail himself of the provisions contained in sec-
tion 3511-3512, which also form a part of this chapter
upon redemptions, and which provide that the offer to re-
deem may be met by a · responsive offer to credit the
debtor with like sum offered to be credited by the pro-
posed redemptioner, which responsive offers may be al-
ternately repeated until one or the other declines to

42

further credit—thereby securing to the debtor the fullest benefits intended by the statute.

It is, however, insisted by counsel for appellee in argument that the case of *Grigg v. Banks, supra,* is a parallel case with the one at bar and conclusive of the question here involved. In this conclusion counsel has evidently fallen into error. In that case, Mrs. Grigg, who was a judgment creditor of the common debtor, Gilmer, sought to redeem by merely paying off the amount for which the property had been sold at execution sale. The facts were, the property had been levied upon by attachment at the suit of Goldthwaite and Holmes against Gilmer, in which suit they obtained a judgment. Banks, who held a mortgage against the property, which, however, was subsequent in time to the levy of the attachment, took a transfer of the judgment of Holmes and Goldthwaite to himself and had the property sold under execution on this judgment, he, Banks, becoming the purchaser at the execution sale. Subsequent to this sale, Banks foreclosed his mortgage upon the property, to which he had acquired title under the execution sale, and became the purchaser at the foreclosure sale. Mrs. Grigg, as above stated, sought to redeem the property from Banks under the execution sale, insisting that the mortgage debt did not constitute a lawful charge. The question of an unpaid balance on the mortgage debt after foreclosure did not arise in the case. There was no question that if Banks had sold under his mortgage, after having first entered satisfaction of the judgment which he purchased, he would have been entitled to be reimbursed what he paid in the extinguishment of the prior execution lien. It was observed by the court in that case that such course should have been pursued by Banks, and the fact that he had made a mistake in selling under the execution instead of entering satisfaction of the judgment would not be visited upon him, but that a court of chancery would relieve him of such mistake and require the redemptioner to pay all the mortgage debt.

From what we have said it is our conclusion that as against the judgment creditor, offering to redeem from the mortgagee who purchased at her own foreclosure

sale, the unpaid balance of the mortgage debt, within the meaning of the statute, does not constitute a lawful charge which the judgment creditor, offering to redeem, is required to satisfy.

As we have stated, this being the first time that the exact question involved in this case has been presented for a decision by this court, no rule of property has been established, and the doctrine of *stare decisis*, insisted upon by counsel, is without application, and we therefore consider it unnecessary to discuss that proposition.

The only other question presented by the demurrer to the bill is that of a misjoinder of John M. Elliott, the husband of May R. Elliott, as a party defendant. It is shown in the bill that John M. Elliott and his wife both entered into the contract of sale with Donahoo. The bill prays that the equities of all the parties be adjusted; that John M. Elliott be required to join in a deed with his said wife upon redemption. This is not a suit upon any contract made by the wife, or upon any engagement into which she has entered within the meaning of section 2527 of the Code. But whether John M. Elliott, the husband, was a necessary party or not, we think it clear that he was not an improper party to the bill.

The decree of the city court must be reversed and the cause remanded.

TYSON, J., *dissenting.*—The theory upon which the JUSTICE delivering the opinion predicates the right of a judgment creditor to redeem from a mortgagee, as purchaser at a sale under a power contained in a mortgage authorizing him to do so, without being required to pay the balance due by the mortgagor upon the mortgage debt, is based upon two propositions: (1) That the mortgagee after foreclosure has no lien, legal or equitable, for this balance; (2) that the balance due by the mortgagor upon the debt is not such a claim for which a court of equity would condemn the lands in the hands of a judgment creditor after he had acquired the title by redemption.

These two propositions he deduces from the cases of *Grigg v. Banks*, 59 Ala. 311; *Lehman v. Collins*, 69 Ala.

127; *Cramer v. Watson,* 73 Ala. 127; *Parmer v. Parmer,* 74 Ala. 285; *Graham v. Ware,* 79 Ala. 192; and *Harris v. Miller,* 71 Ala. 26.

The proposition numbered (2) I insist is not a correct deduction from the principles announced in those cases, as will be made to appear later in this opinion from a careful analysis of them.

The right of redemption here sought to be enforced "is purely the creature of legislation and can only be exercised by the persons named in the statute, in the mode, within the time and upon the conditions there prescribed." This right cannot be enlarged by the court for the purpose of enforcing some supposed equitable claim residing in the party invoking the aid of the statute. Nor can the courts adopt a construction of the statute for the purpose of enlarging or narrowing the right conferred by it by dispensing with a compliance with its terms.—*Bebee v. Buxton,* 99 Ala. 117; *Powers v. Andrews,* 84 Ala. 289; *Nelms v. Kennon,* 88 Ala. 329.

It is admitted in the majority opinion that when the redemption is sought by the mortgagor, debtor, from the mortgagee, as purchaser, he must pay the balance remaining unsatisfied upon the mortgage debt "as lawful charges" before he will be permitted to redeem. But it is held that what are "lawful charges" against the debtor are not "lawful charges" against his judgment creditor. And this conclusion is reached solely upon the idea that the statute was enacted for the benefit of the debtor in order to prevent a sacrifice of his lands, overlooking the fact that the statute by its terms also protects the purchaser as well. The party seeking redemption, whoever he may be, whether debtor or judgment creditor, is required to pay among other things, all "lawful charges." Lawful charges against the debtor? No; but lawful charges *upon the lands,* without regard to the status of the title established by a sale under the mortgage.

Section 3507 of the Code confers on the debtor, or his vendee, the right to redeem upon paying or tendering to the purchaser or his vendee the purchase money with ten per cent. *per annum* thereon and *all other lawful charges.* Section 3510 provides, "All judgment cred-

itors of the debtor * * * may *in like manner* redeem the land from such purchaser or any one claiming under him, by paying or tendering the amount bid for such land at the sale thereof and ten per cent. per annum thereon, *together with all lawful charges;* and by further offering to credit the debtor upon a subsisting judgment with a sum at least equal to ten per cent of the amount originally bid for the land."

The different construction placed upon the two statutes as to what the words "lawful charges" mean in each finds no justification in any change of phraseology. For it is clear that the judgment creditor is required to do what the debtor is required to do and more, to-wit: by offering to credit the debtor upon his judgment at least ten per cent of the amount originally bid by the purchaser for the land, thus conclusively showing that the policy of the statute is to favor the debtor rather than the redeeming creditor. As said in *Posey v. Pressley*, 60 Ala. 249: "Personal benefit to the creditor is not intended except so far as it is in relief of the debtor." This being the adjudged policy of the statute, and there being no justification on account of any change in phraseology requiring a different construction, it cannot be, that the words "lawful charges," when used in fixing the terms upon which a debtor may redeem, shall be given a more enlarged meaning, imposing upon him greater burdens than is given to them when used conferring the same right upon his judgment creditor. Such a construction not only does violence to the policy of the statute as declared by this court, but is unsound as a rule of construction.

In *Lehman, Durr & Co. v. Robinson,* 59 Ala. 235, the court quoted approvingly from Potter's Dwarris on Statutes 194, this language: "If the same words occur in different parts of a statute or will, they must be taken to have been everywhere used in the same sense." This same authority quoting from Lord Denman, says: "We disclaim altogether the assumption of any right to assign different meanings to the same words in an act of parliament, on the ground of a supposed general intention in the act. We think it necessary to give a fair and reason-

able construction to the language used by the legislature, but we are not to assume the unwarranted liberty of varying that construction for the purpose of making the act consistent with any views of our own."

In *Harris v. Miller, supra,* after adopting the general definition given to the word "charge" in *Grigg v. Banks* and *Lehman v. Collins* and other cases, that it evidences "every lien or incumbrance or claim the purchaser may have on the premises and for which at law or in equity he would be entitled to hold the lands as security or to the satisfaction of which a court of equity would condemn them," says: "It is a just and plain principle of the law of mortgages that payment of the mortgage debt is a condition precedent to redemption.—*Gliddon v. Andrews,* 14 Ala. 733. This principle the statute of redemption *was not* intended to *disturb or change.* And if the statute extends to sales at which the mortgagee becomes the purchaser, the mortgagor cannot redeem without paying the entire debt. *The debt so far as it is not extinguished by the bid at the mortgage sale, is a lawful charge on the land.* * * * The statute and the statutory right of redemption cannot be perverted into an instrumentality by which the mortgagor may deprive the mortgagee of the security for the debt which the mortgage affords. The offer to redeem by the mortgagor did not vary his relation to the mortgagee."

In that case the argument was made that by foreclosure the mortgage lien was extinguished and therefore any unsatisfied balance upon the mortgage debt could not be a lawful charge upon the land. The court held that notwithstanding the foreclosure it was a lawful charge, distinctly recognizing the principle announced in *Parmer v. Parmer,* 74 Ala. 288, where it is said, the policy of the statute of redemption and of the equity of redemption at common law is "essentially the same" and the principle above quoted "the statute of redemption was not intended to disturb or change the plain principle of the law of mortgages, that payment of the mortgage debt is a condition precedent to redemption." Surely if the statute placed the mortgagor and mortgagee upon the same footing as to the matter of redemption as

a redemption of the equity at common law, the person, whether he be the debtor, or a judgment creditor, offering to redeem must pay the entire mortgage debt. In support of this principle where the party offering to redeem was not precluded by the foreclosure proceedings see *Gliddon v. Andrews, supra; Dozier v. Mitchell,* 65 Ala. 511; Beach on Modern Equity, § 475; Pomeroy's Eq. Jur., § 1220; 2 Jones on Mortgages, § 1070; *Collins v. Riggs,* 14 Wall. 491; *Benedict v. Gilman,* 4 Paige Ch. 58; 20 Am. & Eng. Ency. of Law, 620.

If I am correct, and my assertion to this effect finds support in the language used in *Harris v. Miller,* that the policy of redemption under the statute is the same as at common law, it is beyond the pale of controversy that a judgment creditor coming in to redeem from the mortgagee as purchaser, is bound to pay the balance due upon the mortgage debt as "lawful charges." As accentuating the correctness of the proposition that such is the policy of the statute, no conveyance is required by the purchaser to the redemptioner, upon redemption by a debtor, to convey the title to him acquired by such purchase.—Code, § 3507.

In my opinion this principle has been expressly applied to redemption under the statute by judgment creditors in the cases of *Grigg v. Banks* and *Cramer v. Watson,* and the words "lawful charges" were clearly held in each of these cases to mean the same thing when applied to rights of a debtor offering to redeem from his mortgagee, as purchaser, and of a judgment creditor offering to redeem from a mortgagee, as purchaser. It is said in the majority opinion that the case of *Grigg v. Banks* is not conclusive of the question for the reason that "if Banks had sold under his mortgage after having first entered satisfaction of the judgment which he purchased, he would have been entitled to have been reimbursed what he paid in the extinguishment of the prior execution lien * * * and the fact that he had made a mistake in selling under the execution would not be visited upon him, but that a court of chancery would relieve him of such mistake and require the redemptioner to pay the mortgage debt." The fact is, and this is shown in the

statement of facts set out in the majority opinion, Banks did foreclose his mortgages upon the lands after he had acquired the title as purchaser at an execution sale, which execution was a prior lien upon the lands; and it was with his status as purchaser under execution sale and as purchaser of his own lands under the mortgages, that the court was compelled to and did deal with. The real question presented and the real question decided, was, not whether the *judgment* and *execution* created a lawful charge, but whether the mortgages constituted such a charge. While Chief Justice Brickell in the opinion delivered by him held that the purchase by Banks at the sheriff's sale "had no other effect than to remove the lien of the attachment as a charge or incumbrance on the premises" and "clothed him with no other right or interest than that of demanding compensation for the money properly expended in its removal," and that "though in a court of equity he held that estate as a trustee for the mortgagor without right to derive from it any personal benefit or a title antagonistic to that of the mortgagor," yet, it is equally true that as against Grigg, the judgment creditor, the title acquired under the execution sale was absolute both at law and in equity; a sale from which Grigg could redeem under the statute and under the statute alone; and *from that sale* and *not from the mortgages,* redemption was sought. It appears from the record that Grigg expressly declined to recognize Banks' right to require the mortgage debt to be paid, and as I have said, this was the real question in the case. The Chief Justice, in the conclusion of his opinion, stated the doctrine, which is sound and equitable and applicable to the fact of the case in hand, to be: "It is a principle too well settled to be a matter of controversy and of very general, if not universal application, that a party fairly acquiring the legal estate will not be compelled to part with it until all charges or claims thereon, to which he is entitled in law or equity are satisfied."

Justice Manning delivering an opinion in the case, adding as he says to the views expressed by the Chief Justice, said: "It is clear that if instead of having the

land sold under the judgment and mortgages both, Banks had merely entered satisfaction of the judgment, and had caused the land to be sold and had purchased it under the mortgages only, appellant [Grigg] before she could redeem, *as a judgment creditor* under the statute, from him, would have had to reimburse to him, as a part of the 'lawful charges' what the judgment of Holmes and Goldthwaite, an incumbrance on his title as mortgagee had cost him; and that he could also have interposed and *required her to pay the entire mortgage debt.* * * * Certainly nothing could be more contrary to some of the universally accepted and best established maxims of equity law, than for a court of equity to interfere, in a case like the present, to set aside the legal rights and superior equities of a party in possession and elevate above them a claim resting upon considerations which must be regarded as very much less meritorious. This, of course, does not refer to the claim of Mrs. Grigg against Gilmer, but to the contention between her and Banks."

This last quotation is a distinct announcement that whether a claim is a "lawful charge" upon the lands is not, as said by my Brothers, dependent upon the question as to whether a court of equity would condemn the lands in the hands of a judgment creditor after he had acquired the title by redemption, but whether the claim is an equitable charge upon the lands as against the debtor.

In *Cramer v. Watson* the facts were these: Steele executed a mortgage to Patton, and then a second mortgage to Cramer and Cohen. Upon default, Patton foreclosed his mortgage by sale under the power contained in it, and Cramer and Cohen purchased at the sale at and for the amount due upon the mortgage debt. Watson, having obtained a judgment against Steele, sought to redeem from Cramer and Cohen and for that purpose, tendered to them the amount of their bid and ten per cent per annum thereon, failing, however, to include in the tender the amount due Cramer and Cohen on their mortgage debt. This tender was refused by them because, among other things, it did not include their mort-

gage debt; and Watson filed his bill, which was treated by this court as a bill to redeem under the statute.

One of the questions involved was whether Watson should be required to pay the mortgage held by Cramer and Cohen. On this point, the court said: "The payment of lawful charges upon the lands which have accrued to the purchasers is as essential, is as clear and distinct a right of the purchasers and as clear and distinct a duty of the party offering to redeem as is the payment of the purchase money and the statutory interest," and that "the tender of the purchase money and interest, withholding or not including a tender of lawful charges, may rightfully be rejected by the purchaser." "The offer to redeem by the appellee (Watson) did not include the payment of the mortgage debt due to the appellants. * * * The offer of payment of the mortgage debt seems to have been omitted upon the supposition that the appellants were bound to apply the rents accruing while they were in possession to its payment and these would operate its extinguishment. The mortgage debt due the appellants was a lawful charge upon the lands, *to the payment of which whoever came to redeem under the statute was bound.* The words of the statute are 'lawful charges,' and their proper significance is every lien or encumbrance or *claim* the purchaser may have upon the premises and for which, at law or in equity he is *entitled to hold the lands as security* or to the satisfaction of which a court of equity would condemn them."

It may be said that Cramer and Cohen held a second mortgage, instead of an unpaid balance on a first mortgage. Upon principle this can make no difference for the reason that as holders of the second mortgage they were merely the assignees of the equity of redemption, and that equity had been as effectually foreclosed by the sale under the first mortgage as it would have been by a strict foreclosure or by sale under a decree of foreclosure in a proceeding had for that purpose, to which they had been made parties.—*Powers v. Andrews,* 84 Ala. 289; *Childers v. Monette,* 54 Ala. 317; *Otis v. McMillan,* 70 Ala. 59; *Aiken v. Bridgeford,* 84 Ala. 295; *Harris v. Miller, supra.*

The second mortgage created a lien or incumbrance only upon the equity of redemption and the equity of redemption having been destroyed by the sale under the power in the first mortgage, Cramer's and Cohen's rights as lien-holders were destroyed also. So manifestly their right to have this mortgage debt paid them as a condition precedent to the right of the judgment creditor, Watson, to redeem from them, must rest, not upon the principle as announced in the majority opinion, but upon the broad principle of equity which I contend for, and which was distinctly enforced by the court in that case, that the lands were an equitable security in their hands for this debt.

It is but the application of the well known and often applied equitable principle, that a court of equity will keep alive a superior equity as against a junior incumbrancer, notwithstanding as between the original parties the contractual lien out of which the equity arose has been extinguished. For, says Justice SOMERVILLE in *Fouche v. Swain,* 80 Ala. 153, in speaking of a first mortgage given by Prior, which had been extinguished by the execution of a deed by him to Mrs. Swain to the lands conveyed by the mortgage, which deed was subsequent to the execution and recordation of Prior's mortgage held by Fouche, "it may have been satisfied as between her [Mrs. Swain] and Prior. * * * But as to any junior incumbrancer, her superior equity would still be preserved in its full force and vitality. There would be but poor show of logic in holding that this strengthening of her title by Mrs. Swain, has, after all, served to weaken it. It is common practice for courts of chancery to keep alive equitable liens and incumbrances as against strangers or third parties. Equity could often be but badly administered without it."

In *Mitchell v. Brown,* 6 Cold. 505, which was cited with approval in *Grigg v. Banks,* the Supreme Court of Tennessee, speaking of redemption in that State under a similar statute, said: "It is a well settled principle that a party who has the legal title will not be forced to part with it until the debts he has against the party are satisfied, growing out of the transaction. The rule is, the

party holding the legal title cannot be forced to a conveyance until the debts are paid."

The only case cited in the majority opinion on the point here in question is *Ogle v. Koerner,* 140 Ill. 170, which is wholly unlike this case. In that case there had been a foreclosure of the senior mortgage and the mortgaged property had been purchased by the senior mortgagee for less than the debt. The junior mortgagee or his assignee, had redeemed the land from him, and after redemption the senior mortgagee sought to subject the lands again to the lien of his mortgage. From this statement it is apparent that the question was, not what the junior mortgagee should pay to redeem, but what was the effect of such redemption under the statutes of Illinois. Besides the statute of redemption of that State is unlike ours, in that the redemptioner was only required to pay the sum bid and statutory interest and did not contain the additional requirement of the payment of "all lawful charges."—R. S. of Ill. 1874, Chap. 77, §§ 18-20.

Indeed, the policy that "lawful charges" are charges upon the land without regard to the status of the title established by a sale, is written in the face of the statute, as well as declared in the decisions above cited. Where redemption is sought it proceeds as though no sale had taken place, and the original security, whether it be a mortgage, or a judgment, under which the purchaser derives his title, if he be the mortgagee, or the owner of the judgment, constitutes the charge upon the lands. I say it is written in the face of the statute. We have only to refer to section 3511, where the redemption is sought by a judgment creditor from a "purchaser or person claiming under him" under a judgment. In such case, the redemption proceeds as though there had been no sale, and so long as the purchaser, or person claiming under him agrees to credit, and actually does credit, the debtor upon a subsisting judgment with the sum offered to be credited by the creditor seeking to redeem, he, the purchaser, may retain the land, unless the creditor makes a further offer to credit the debtor upon a subsisting judgment with an additional sum, not less than ten per

cent of the original purchase money, to which the purchaser is required to respond by offering to give the debtor a similar credit. This system of bidding may continue until the purchaser from whom the redemption is sought has entirely satisfied his judgment against the debtor. And until the judgment is so satisfied, the redemption cannot be perfected.

But whatever may be the decisions of other States as to the policy of their statutes of redemption, this court, in my opinion, is unalterably committed to the construction of our statute by the decisions we have quoted from, and the policy of the statute as there declared cannot be departed from.

Adopting the language of the court in *Matheson v. Hearin*, 29 Ala. 210, "We think the presumption a fair one that the opinions delivered in these cases (*Harris v. Miller, Cramer v. Watson* and *Grigg v. Banks*) have been acted upon as a rule of property. And, therefore, the reasons which impel the courts to uphold every settled rule of property require us to reaffirm and maintain those cases, not only as to the points necessarily involved and decided by them, but also as to the principles which are declared in them."

It is also said in the majority opinion that a mortgagee, for the unpaid balance of the mortgage debt after foreclosure sale, is a creditor within the meaning of section 3514, and as such creditor, upon the offer of another creditor to redeem, he has a right to avail himself of the provisions of sections 3511 and 3512. This is in direct conflict with the principles declared in the opinion in the case of *Owen v. Kilpatrick*, 96 Ala. 421, which in my opinion is a correct construction of the several sections of the Code providing the right of redemption, and also with principles announced in *Freeman v. Jordan*, 17 Ala. 500, and *Thomason v. Scales*, 12 Ala. 309. The whole field of operation of section 3514 is to confer upon the class of persons therein named the right of redemption as to lands of the debtor other than those involved in the purchase.

The result of the holding of my brothers is not only to strike down the policy of the statute as declared in *Har-*

*ris v. Miller, Grigg v. Banks* and *Cramer v. Watson,* but to confer a special privilege upon the judgment creditor to the exclusion not only of the debtor himself, but to the exclusion of the debtor's vendee, junior mortgagee or assignee of the equity of redemption.   To elevate his right above those of these classes, by relieving him from the payment of "lawful charges," which are "lawful charges" upon the lands as against them, notwithstanding he could have under his judgment only condemned to its satisfaction, before foreclosure, such interest as the debtor himself had in the land, which was, after foreclosure, as we have shown, the right to redeem upon the payment of the entire mortgage debt.   For by section 3505 of the Code, the right of redemption is conferred not only upon the debtor and his vendee, but upon a junior mortgagee or assignee of the equity of redemption and by section 3515 conferred upon a child of the debtor to whom a conveyance has been made, which must be exercised and enforced in the same manner as the right of the debtor or his vendee is exercised under section 3507, and of necessity ladened with the same burdens.   This right of redemption is conferred by the statute upon various classes of persons, including the judgment creditor, because of their relation to the debtor and depends for its exercise upon the existence of such relation.   The conferring of this valuable privilege upon these various classes of persons, other than the debtor, was not only for the purpose of preventing a sacrifice of the debtor's property, but to enable them to protect, if possible, their claims, either as owners of the equity of redemption or as creditors.   And just why they are not upon the same footing, in this sort of case. I am unable to see.   Certainly it cannot be said with any show of equity or good conscience, that a judgment creditor should not bear the same burden as a junior mortgagee who is not only an owner of the equity of redemption, but a creditor as well.   The illustration made use of in the opinion does not serve to defeat the invidious preference, which I have pointed out, given the judgment creditor over a junior mortgagee, the debtor's vendee, assignee of the equity of redemption, or child to

whom a conveyance has been made by him. Nor does it serve to illustrate, that the debtor's property is not sacrificed. On the contrary, it demonstrates conclusively that the policy of the statute, as declared in the opinion, is exclusively for the benefit of the judgment creditor, converting the statute into an instrumentality by which a profit of $5,000 less $500, which he is bound to credit the debtor with on his judgment, is secured to him; and this, too, by depriving the superior incumbrancer or claimant of it and giving it to him, who is the holder of an inferior claim. This process of taking the profit from one creditor and bestowing it upon another is certainly of no personal benefit to the debtor, beyond the ten per cent required to be credited on the judgment. He is still a debtor to the mortgagee in the sum of $5,000, the unsatisfied balance upon the mortgage debt and the balance remaining due upon the judgment after deducting the credit of $500, entailing a loss upon him of $4,-500, which confessedly has gone into the pocket of the judgment creditor. It is not an answer that the debtor can regain this $4,500 by redeeming from the judgment creditor, for this he cannot do, as this right is conferred by the statute only upon another judgment creditor. *Owen v. Kilpatrick, supra.* Nor is it an answer that the debtor should not have permitted his lands sold in the first instance under the mortgage, or that he should have redeemed from the mortgagee before the judgment creditor did. Had he been pecuniarily able to have prevented the sale under the mortgage, he would never have had any need for the statute, and for the same reason he would have had no judgment creditor. Indeed, it was on account of his impecunious condition and for the purpose of relieving it, as far as possible, that the statute was enacted. Under my contention, the judgment creditor being required to pay the entire mortgage debt, the debtor is entirely relieved of the balance, thereby saving the $4,500 which the judgment creditor is permitted to make, and in addition gets a credit of $1,000, instead of $500 upon the judgment. It is no answer that this construction yields no profit to the judgment creditor. Suffice it to say, that the statute was not enacted for the purpose of enabling him to reap a profit out of the unfortunate financial condition of his insolvent debtor, but, as I have repeatedly said, to protect the debtor and at

the same time to secure to the purchaser from whom the redemption is sought, his right also. Nor is the position tenable that the unsatisfied balance is not a lawful charge, because, if the judgment creditor is required to pay it, together with ten per cent upon the whole debt to the mortgagee, and in addition give to the debtor the credit imposed by the statute, he would thereby be required to pay more than the value of the property, thereby making the right to redeem a practical failure. The answer to this position is, the unfortunate debtor, or his vendee, junior mortgagee, an assignee of the equity of redemption, and a child of the debtor to whom he has executed a conveyance, is required to pay to the mortgagee this ten per cent, in addition to the whole debt, and if the legislature in imposing this penalty upon them did not regard it a hardship, certainly it cannot be so regarded by the courts in the case of a judgment creditor, and that, to such an extent, so as to relieve him from complying with the plain mandate of the statute requiring him to pay "all lawful charges."

Great stress is placed upon the language used in *Harris v. Miller,* that "the charges may and will vary with different purchasers." No one doubts this. For if a stranger becomes the purchaser at a mortgage sale of lands, he would not be entitled to have paid to him more than the amount of his bid, taxes, value of improvements, and ten per cent thereon by any redemptioner, whether he be the mortgagor or his vendee, a junior mortgagee, an assignee of the equity of redemption or a judgment creditor of the mortgagor. But because this is true, it does not follow as a logical sequence, that the *charges may and will vary with different redemptioners from the same purchaser.* On the contrary, it may be said that no such conclusion can be logically deduced. Such a conclusion inevitably confers a special privilege upon the judgment creditor, an invidious distinction which I do not believe was intended to be conferred by the legislature.